**RIVERSIDE INSURANCE COMPANY OF AMERICA, Plaintiff-Appellee,**

v.

**William E. SMITH, Fairy Lee Smith and Shirley Landis, Individually and as Mother and Natural Guardian of Shirley Jean Cobbs, Deceased, Defendants-Appellants.**

**No. 79–2001.**

United States Court of Appeals, Seventh Circuit.

Argued May 7, 1980.

Decided Aug. 18, 1980.

Rehearing Denied Nov. 18, 1980.*

---

* Judge Swygert dissenting.

Robert F. Wagner, Indianapolis, Ind., for defendants-appellants.

John R. Hiner, Indianapolis, Ind., for plaintiff-appellee.

Before SWYGERT and CUMMINGS, Circuit Judges, and NICHOLS, Associate Judge.*

NICHOLS, Associate Judge.

This case is before the court on the contention of defendants-appellants, William E. Smith, Fairy Lee Smith, and Shirley Landis, individually and as mother and natural guardian of Shirley Jean Cobbs, deceased (hereinafter appellants), that the district court's decision to grant plaintiff-appellee's Riverside Insurance Company of America (hereinafter appellee), motion for directed verdict was erroneous as a matter of law and that particular rulings made by the district court before and during trial constitute reversible error. Alternatively, appellants contend that they should be granted a new trial. After thorough consideration of these matters, we affirm the conclusion of the district court.

* The Honorable Philip Nichols, Jr., Associate Judge of the United States Court of Claims, is sitting by designation.

**1004**

The facts of this case, established by the district court and not disputed by the parties, are as follows. An automobile collision occurred early in the morning of February 26, 1976, on a state highway between Franklin and Martinsville, Indiana. Appellant's decedent lost her life. So did Kathy J. Arnold, driver of the other car. That other car was owned by Frances C. Heidenreich. Appellee's insurance policy covered the latter car when driven by the owner and by certain others. In an Indiana state court action, appellants obtained three individual monetary judgments against Jean Goss, Administratrix of the Estate of Arnold.

The car had been loaned to Miss Arnold by Willetta Sue Heath (hereinafter Willetta), an adult daughter of the Heidenreichs who lived with them in Martinsville.

At that time Willetta was employed at Arvin Industries in Franklin, about 28 miles from Martinsville. Up until a few days prior to the accident involved, Willetta had ridden to work in a car pool with another Martinsville resident also employed at Arvin.

When Willetta lost her car pool the insured, Frances Heidenreich, gave Willetta permission to operate the insured car to drive from Martinsville to Franklin to her place of employment and return. On a few occasions prior to that, Mrs. Heidenreich had given Willetta permission to drive from Martinsville to Franklin to her place of employment on nights when Willetta planned to participate in a bowling league the following day and intended to stay in Franklin overnight.

Willetta drove to work on Wednesday, February 25, 1976, intending to stay overnight with a friend in Franklin so that she could bowl the following day.

When she got off work at 1:00 a. m. on February 26, 1976, Willetta went to a cafe in Franklin where Kathy Arnold approached her and asked to use the insured car to return to Martinsville. Willetta, without calling her mother, allowed Arnold to take the car and she left the cafe about 1:30 a. m. on Thursday, February 26, 1976,

promising Willetta that she would take the car directly to Mrs. Heidenreich. Appellee's policy provides in reference to insureds:

III. Definition of Insured. Except as provided under Insuring Agreement V and Coverage C–Section (2), the unqualified word "Insured" includes the Named Insured and, if the Named Insured is an individual, his spouse, and also includes any other person while using the automobile or any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Insured or spouse or with the permission of either or with the permission of an adult member of the Named Insured's household, other than a chauffeur or domestic servant, provided that such adult member of said household is authorized by the Named Insured or spouse to grant such permission. * * *

The district court specifically found that although Willetta was an adult member of the insured's household, she had not been authorized by appellee's named insureds Charles and Frances Heidenreich, to grant permission for use of the automobile to any other person. Indeed, Willetta had been specifically prohibited by the Heidenreichs from allowing other persons to operate the vehicle. The district court found that this was a long-standing rule in the Heidenreich household and was well known to their daughter. Moreover, when Willetta started using her mother's car the week of the accident, she had been specifically reinstructed as to the family's prohibition against allowing others to operate it. Finally, the district court found that neither Mrs. Heidenreich nor her husband, Charles, granted permission to Kathy Arnold to operate Mrs. Heidenreich's automobile at the time of the accident.

The district court stated that while there had been some testimony that Willetta had loaned the car involved to others, and that Kathy Arnold had operated Mrs. Heidenreich's automobile on occasions prior to the accident, there had been no evidence, or inference therefrom, that either Mr. or Mrs. Heidenreich had knowledge of such occur-

rences, condoned them, and thereby impliedly waived their expressed prohibition to Willetta not to allow others to drive Mrs. Heidenreich's automobile.

Thus, pursuant to these findings of fact, the district court directed a verdict for appellee, concluding as a matter of law that:

1. under Indiana law an insured may properly expressly forbid or prohibit a permittee from allowing use of the vehicles by others and if such use is permitted contrary to such prohibition, there is no coverage under the policy for the permittee's permittee;

2. accordingly, the insureds, Mr. and Mrs. Heidenreich, were at liberty to contract that coverage would be extended to permittees only when they had been authorized to use the car by the named insured, spouse, or one adult member of the household who had been authorized to grant such permission;

3. Kathy Arnold was not operating the Heidenreich automobile with the permission, express or implied, of the named insured and the actual use of the automobile had not been approved by an adult member of the Heidenreich household authorized by the named insured or spouse to grant such permission;

4. appellee's policy provision requiring permission to be given either by the named insured or by an adult member of the household authorized to grant permission is not contrary to Indiana public policy and is clear and unambiguous; and,

5. under Indiana law, where there has been an express prohibition to a permittee against allowing others to operate the automobile, the insurance company has no duty to defend or pay any judgment obtained against such operator. *State Farm Mutual Automobile Ins. Co. v. Automobile Underwriters, Inc.*, 371 F.2d 999 (7th Cir. 1967). Moreover, appellants' claim for $5,000,000 in punitive damages for appellee's alleged wrongful refusal to pay the state court judgments awarded appellants pursuant to the assignment from the estate of Kathy Arnold is dismissed because a claim for punitive damages is not a property interest and thus not assignable under Indiana law.

In this court, appellants make the following three arguments. First, appellants contend that the district court erred as a matter of law in directing a verdict for appellee because evidence presented at trial was more than sufficient to withstand appellee's motion for a directed verdict. Secondly, appellants contend that the district court committed reversible error in disallowing appellants' claim for punitive damages. Appellants argue that this claim arises out of a breach of contract and since a contract claim is itself assignable, so too must the punitive damages claim be assignable. Finally, appellants argue that the district court committed reversible error in its refusal to permit appellants' counsel to interrogate certain witnesses, namely members of the Heidenreich family, by leading questions under Rule of Evidence 611(c). Appellants contend that if such questions had been allowed, the critical issue of emergency authorization would have been clarified in appellants' favor.

We reject each of appellants' arguments. A discussion of each issue follows.

Regarding appellants' first argument that sufficient evidence existed on the record to withstand appellee's motion for a directed verdict, appellants contend that the jury could have reasonably returned a verdict for appellants on several bases. First, appellants argue that particular evidence presented at trial showed that Mrs. Heidenreich authorized Willetta to loan the car in an "emergency" and Willetta's testimony about Kathy Arnold's difficulties on the night of the accident would support a verdict on the theory that Mrs. Heidenreich's express authorization to let another drive in an emergency was applicable and overrode her general prohibition against such use of the car. More specifically, appellants contend that while it is true that Mrs. Heidenreich's definition of emergency which would warrant Willetta allowing another person to drive the car extended only to individual cases in which Willetta was sick, injured, or otherwise disabled from

driving herself, it is also clear from Mrs. Heidenreich's testimony, say appellants, that she may well have failed to communicate this limitation on her meaning to Willetta. However, our perusal of the relevant testimony establishes that it is not susceptible to that interpretation. On two occasions at trial, Mr. Wagner, counsel for appellants, tried to persuade Mrs. Heidenreich to say that it would be satisfactory for someone else to drive the car in any emergency. The first colloquy reads as follows: (Pages 163–165 of trial transcript.)

Q. (By Mr. Wagner) Mrs. Heidenreich, did you ever indicate to your children that they had the right to loan out the vehicle on an emergency basis?

A. Yes: If they were hurt or injured, got sick, they could let someone else to drive them home.

Q. And that was an exception, was it not?

A. Right.

Q. Now did you convey that exception to your children?

A. I'm sorry, I don't understand what you mean. (The reporter read the pending question.)

A. I don't know how to answer.

Q. Mrs. Heidenreich, your children were aware of the fact that they could loan the car if they felt there was an emergency.

MR. HINER: I object to the leading question. Her testimony was if the children got sick, got hurt, got injured. The question now embraces any emergency, and it's contrary to the testimony.

THE COURT: Now it's a compound question as well, Counsel. We only have one child involved in this case. That's Willetta; that's the one. That's why whether she conveyed or communicated to them, she may not understand what you mean by "convey" in your question as well. Objection sustained.

MR. WAGNER: I will withdraw it, your Honor.

Q. (By Mr. Wagner) Mrs. Heidenreich, when you say you told them about an emergency, did you ever define to them what an emergency was? I'm talking about Willetta; I'm sorry.

A. Do you mean in so many words?

Q. Yes.

A. I can't remember.

Q. Now you felt your daughter was a fairly responsible girl, didn't you?

A. Yes.

Q. And a mature girl?

A. Yes.

Q. Did you ever tell your daughter—or convey or indicate to your daughter she had a right to loan the car if she felt there was an emergency?

A. No, not in that respect.

Q. Would you tell the Court, please, and jury in what respect you conveyed that?

A. I did a few minutes ago: If they were hurt or injured or got sick themselves.

Q. Did you tell them that?

A. Well, it was understood since they would start driving: The only reason they were to loan the car, let anyone drive the car, was to bring them home if they were not capable, able of driving.

Q. Isn't it the truth, Mrs. Heidenreich, that what you told your children or what your children were informed was that if they felt there was an emergency that they could use the car or loan the car?

MR. HINER: Objection, your Honor. Again it's a leading question.

THE COURT: Sustained.

Even after the foregoing testimony, appellants' counsel continued to press Mrs. Heidenreich—beginning at page 165 of trial transcript:

Q. (By Mr. Wagner) Mrs. Heidenreich, did you make a statement contrary to the statement you made about the emergency use of the automobile?

A. I don't know.

Q. Do you recall my asking you at the time we took your deposition on October 12, 1979, (sic) the question: "Now when you say 'rule', what do you mean?" And giving this answer: "Since my kids started driving, they weren't to loan the car to

anyone; they weren't to let anyone drive, only under emergency circumstances like if *someone* got sick or something?" (emphasis added by Riverside.)

Q. (By Mr. Hiner) Your Honor, we are objecting. It's a misstatement. The question is, "like if *they* got sick or something," not *"someone."* (emphasis added by Riverside.)

Q. (The Court) Counsel, did you read the question correctly?

Do you want it read here to see?

Q. (By Mr. Wagner) Your Honor, the question—

Q. (The Court) Mr. Oesterreich, read the question to counsel.

(The reporter read the pending question)

Q. (By Mr. Wagner) Correction, your Honor. "like if they got"—

Q. (The Court) You admit that that's an incorrect reading?

A. (By Mr. Wagner) Yes.

Q. (The Court) You withdraw it?

A. (By Mr. Wagner) Yes. I will ask the correct question.

Q. (By Mr. Wagner) Do you recall stating this answer: "Since my kids started driving, they weren't to loan the car to anyone, they weren't to let anyone drive, only under emergency circumstances if they got sick or something?"

A. Yes.

Q. And do you recall the question, "What type of emergency circumstances"?

And do you recall giving this answer: "Well, if they had—if they had a fall and hurt a leg and arm and gotten sick, they couldn't have driven the car home, that would be the only circumstances I would think. I don't know of any that they've never had to?"

A. Yes, I remember.

We conclude that Mrs. Heidenreich's "emergency exception" envisioned only the situation where her own children would be incapable of driving themselves home and not a situation where, as here, a third party, confronted with her own difficulties, need-ed to borrow the Heidenreich car. Moreover, we also conclude that, as Mrs. Heidenreich testified, her children had understood this to be the meaning of her emergency exception since they started driving. Thus, we reject appellants' contention that a jury could have found Willetta to have been acting under "emergency" authority.

Appellants also argue that a second basis for concluding that the district court erred in granting a directed verdict for appellee is that there is sufficient evidence in the record to support a jury's inference that Willetta was *impliedly* authorized to loan her mother's automobile to Kathy Arnold pursuant to the test set forth in *Home Mutual Insurance Co. v. Automobile Underwriters, Inc.*, 261 F.Supp. 402 (S.D.Ind.1966). There the court stated the elements for implied authorization:

> * * * [C]onsent of the owner to the use by a second permittee of an automobile loaned to a first permittee will be implied in Indiana, if such use is for the benefit of the first permittee, and within the scope of his original permission. * * *
> [*Id.* at 405.]

We conclude under this test that Kathy Arnold was not acting with implied authorization because she was not acting within the scope of the original permission. The owner of the vehicle, Mrs. Heidenreich, had loaned the car to Willetta for the express purpose of allowing her to drive to her job in Franklin and then to return home the following day after bowling. Clearly, the automobile was not being used for its intended purpose when it was being operated not by Willetta, but by Kathy Arnold. Thus, there is no implied authorization here under the *Home Mutual Insurance Company* test.

Finally, appellants argue that the directed verdict was erroneous because the omnibus clause (quoted earlier) of the insurance contract refers not only to the express or implied authority to permit others to use the automobile, as the district court so interpreted, but refers also to the apparent authority to do so. Appellants contend that there was more than sufficient evidence in

the record to create an issue of fact for the jury regarding Willetta's apparent authority to loan her mother's car.

Appellants contend that the use of the word "authorized" necessarily introduces the agency concept of apparent authority into this case. (This type of authority is recognized in Indiana, as appellants correctly point out.) Appellants argue that, in light of other evidence which suggests that Willetta had loaned the car on prior occasions to other individuals, Kathy Arnold could reasonably have believed that Willetta had authority to loan her mother's car to her. Finally, appellants maintain that their interpretation of the omnibus clause is consistent with Indiana public policy which appellants claim mandates a liberal interpretation of this clause in a manner which extends coverage to such permissive third person-drivers without distinction based on matters beyond the driver's ken.

■■■ We disagree with appellants on all points. First, Indiana does not require insurance policies to cover the liability of permissive users, either direct or remote. The Indiana statute on point provides:

> * * * No such policy shall be issued or delivered in this state to the owner of a motor vehicle, by any domestic or foreign corporation, insurance underwriter, association or other insurer authorized to do business in this state, unless there shall be contained within such policy *a provision insuring such owner* against liability for damages for death or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, *express or implied*, of such owner. [Indiana Code S27-1-13-7 (1971.)] [Emphasis supplied.]

Two things become abundantly clear when the insurance policy in issue here is juxtaposed with the above statute. First, appellee's policy is much broader than that required by Indiana law. It provides coverage for the named insured (normally the owner), his spouse and any person using the car with the permission of either the owner

or spouse. It also provides coverage to persons using the car who have been granted permission by an adult member of the household who has been authorized to grant such permission. Indiana law clearly requires that the policy cover the owner against liability when the car is being operated by some other person with his permission, express or implied, but it is silent as to covering anyone else's liability. By providing coverage broader than that required by Indiana law, appellee's insurance contract cannot be said to be violative of Indiana public policy.

However, while appellee's insurance contract provides broader coverage than that required by law, it is not as broad as appellants would have us believe. The Indiana statute which requires coverage for the owner when a car is being operated by a permittee speaks only of *express or implied* permission. We interpret these to be words of limitation on the extent of coverage Indiana has decided to recognize. To inject appellants' "apparent authority" argument into this schematic would disrupt the obvious intent of the Indiana legislature to require coverage only in situations where the permittee had received the express or implied permission of the owner. Moreover, even if we were to accept appellants' apparent authority argument there is no evidence in the record that Kathy Arnold ever inquired as to whether or not the car was insured or ever relied on any representations, if in fact made to her, by Willetta. Moreover, we would be hard-pressed to conclude that in lending her mother's car to Kathy Arnold, Willetta was acting for and on behalf of her mother, so as to be her mother's agent. Thus, while appellee's insurance contract did use the word "authorized," when read in light of the words of limitation in the statute as well as the lack of evidence to establish an agency relationship between Willetta and her mother, we conclude that, in this case, "authorized" means only "empowered" and does not call into play apparent authority concepts.

Appellants' second argument on appeal is that the district court committed reversible

error in its decision to dismiss appellants' punitive damages claim. This argument is mooted by our decision to affirm the directed verdict.

Appellants' final argument on appeal is that the district court committed reversible error in not allowing their counsel to interrogate Frances Heidenreich and Willetta Sue Heath with leading questions under Rule of Evidence 611 (hostile witness rule). We disagree.

■ First, the determination to proceed under Rule 611(c) is wholly within the district court's discretion. *See* 81 Am. Jur.2d, *Witnesses* §§ 429–30 (1976) and authorities cited therein. Appellants concede this in their briefs, yet still argue that had they been permitted to ask leading questions of Mrs. Heidenreich in reference to the meaning of the word "emergency" they might have better illustrated express permission from the owner to Kathy Arnold.

We think that counsel for appellants did interrogate Mrs. Heidenreich at substantial length in reference to the emergency use of the vehicle. In addition to the testimony set forth earlier in this opinion, appellants' counsel interrogated Mrs. Heidenreich on this subject, using leading questions, at pages 187 through 191 of the trial transcript.

Moreover, there was no showing that Mrs. Heidenreich or Willetta had any financial interest in the lawsuit. Both were sued by the appellants in the state court action, but appellants voluntarily dismissed those complaints as to them. Neither Mrs. Heidenreich nor Willetta Sue Heath is a party in the present suit, nor is either an employee of appellee.

For the foregoing reasons, we cannot say that the district court committed reversible error in not allowing appellants' counsel to use leading questions when interrogating Mrs. Heidenreich and Willetta Sue Heath.

It is therefore concluded that appellants' appeal is dismissed and the decision of the district court

AFFIRMED.

SWYGERT, Circuit Judge, dissenting.

The pivotal issue in this case is whether Kathy J. Arnold, who drove the Heidenreich automobile with the permission of Mrs. Heidenreich's daughter, Mrs. Willetta Sue Heath, was an insured as that term is defined in the policy. The policy provides coverage for the named insured (in this case, Mrs. Heidenreich) and "any other person" driving the automobile (here, Ms. Arnold) if that person (Ms. Arnold) had permission to use the car from an "adult member" of Mrs. Heidenreich's household (Mrs. Heath) and if that "adult member" (Mrs. Heath) was "authorized" by the named insured (Mrs. Heidenreich) to grant permission.

There is no dispute that Ms. Arnold had the permission of her friend, Mrs. Heath, to drive the automobile that night and that Mrs. Heath was at the time an adult member of Mrs. Heidenreich's household. The critical question is whether Mrs. Heath was "authorized" by Mrs. Heidenreich to loan the automobile to Ms. Arnold at the time of the accident.

On appeal defendants argue that the authority required by the policy can be any of three kinds: express authority, implied authority, or apparent authority. To base their case on these theories, defendants need to present evidence from which a jury could infer that (1) Mrs. Heidenreich expressly authorized her daughter, Mrs. Heath, to grant Ms. Arnold permission to use the car; (2) Mrs. Heath reasonably implied from what her mother had said that she had authority to loan the car; or (3) Ms. Arnold reasonably concluded from Mrs. Heidenreich's actions that Mrs. Heath had authority to loan the car, even if Mrs. Heath did not in fact have such authority.

Defendants contend first that their evidence was sufficient for a jury finding of express, or at least implied, authorization. Although a plausible argument can be made that the evidence was sufficient to permit the question of implied authority to go to the jury, I am not prepared to say that the trial judge was wrong in rejecting it.

The judge also rejected the contention that Mrs. Heath may have had apparent authorization to loan the car to Ms. Arnold so as to permit that issue to be submitted to the jury. He ruled out of hand that the omnibus clause was not to be interpreted to include that type of authority. The majority agrees with the district court and concludes that, although the insurance company itself selected the word "authorized" for its policy, the company really intended to use the word "empowered" and thereby to exclude apparent authority as a basis for coverage. Such legerdemain is unpersuasive.

In addition to "actual" authority given an agent by his principal, either expressly or impliedly, Indiana's law has for nearly a century recognized "apparent" authority. This type of authority is described in *Over v. Schiffling*, 102 Ind. 191, 196, 26 N.E. 91, 93 (1885):

> If the principal holds out an agent or servant as possessing authority to control a shop or place of business, and a third person acts upon the faith of the appearances so created, the principal may, in such a case as this, be bound by the acts of the apparent agent within the scope of his ostensible authority, although as between the agent and his employer no such authority in fact existed.

Ninety years later the Indiana rule was reiterated in *Burger Man, Inc. v. Jordan Paper Products, Inc.*, 352 N.E.2d 821, 832 (Ind.App.1976) (citations omitted):

> The apparent authority of an agent is that authority which a third person reasonably believes the agent to possess because of some manifestation from his principal. These manifestations which the principal is required to make to the third person need not be in the form of direct communications, but rather the placing of the agent in a position to perform acts or make representations which appear reasonable to a third person is a sufficient manifestation to endow the agent with apparent authority.

For purposes of apparent authority, the actual arrangements between the principal and the putative agent are irrelevant. Instead, one looks to the appearance of authority with which the principal clothes the agent. The rationale behind this development in the law of agency is that a third person, who may not have knowledge of the actual arrangements or relationship between the principal and the agent, should be able to rely in dealings with a putative agent upon his reasonable expectations garnered from the actions of the principal as to the scope of that agent's authority. The rationale was succinctly stated in *Yellow Mfg. Accept. Corp. v. Voss*, 158 Ind.App. 478, 483, 303 N.E.2d 281, 283 (1973) (quoting *Farm Bureau Mutual Ins. Co. v. Coffin*, 136 Ind.App. 12, 18, 186 N.E.2d 180, 183 (1962)):

> When one has the appearance of a general agent the law is clear that a third person dealing with him is not bound to inquire into his specific authority, nor is the principal protected by secret limitations upon the authority of such an agent. The reason for the rule is that where one of two innocent persons must suffer because of the betrayal of a trust reposed in a third, the one who is most at fault should bear the loss. Since the principal put the agent in the position of trust, he is the one who should suffer the detriment.

In this case the trial judge's ruling that the omnibus clause includes only actual authority, express or implied, was overly restrictive. The clause is not plainly so limited. A broad, rather than a narrow, construction is demanded. Public policy, as expressed by court decisions, requires a liberal construction of insurance contracts in order that coverage be provided whenever possible. *Motorists Mutual Ins. Co. v. Johnson*, 139 Ind.App. 622, 629, 633, 218 N.E.2d 712, 716, 718 (1966); *Norways Sanatorium, Inc. v. Hartford Accident & Indemnity Co.*, 112 Ind.App. 241, 248, 41 N.E.2d 823, 825 (1942); *Home Mutual Ins. Co. v. Automobile Underwriters, Inc.*, 261 F.Supp. 402, 405 (S.D.Ind.1966).

Sufficient evidence exists in the record in this case to have allowed a jury to find that Mrs. Heath had apparent authority to loan the car to Ms. Arnold. Mrs. Heidenreich provided her daughter, Mrs. Heath, with a set of keys for the car; the latter drove the car back and forth to work and also drove it

elsewhere; she transported friends and co-workers, including Ms. Arnold, in the car; and on occasion a relative and co-factory worker drove the car back to the Heidenreich home from work while Mrs. Heath went elsewhere. From these facts, a jury could find that Ms. Arnold reasonably concluded that Mrs. Heidenreich had given Mrs. Heath general authority to use the car and thus authority to allow others to use it.[*]

Unfortunately, the decision denies defendants the right to have the jury view the evidence in the light of the full coverage of the policy. In short, the majority has denied the defendants their day in court and given the insurance company an undeserved windfall.

I would reverse and remand for a new trial.

---

[*] No such apparent authority would be inferable if Mrs. Heidenreich had allowed her daughter to use the car infrequently with express permission required for each use and a narrowly defined scope of authority laid out, or if Mrs. Heidenreich had indicated to Ms. Arnold that her daughter did not have authority to loan the car.