YELLOW MANUFACTURING ACCEPTANCE CORPORATION *v.*
ESTAL M. VOSS.

[No. 1-373A47. Filed November 13, 1973.]

*John L. Kellerman, Wycoff, Greeman & Kellerman,* of Batesville, for appellant.

*Greeley Gay,* of Versailles, for appellee.

LYBROOK, J.—Plaintiff-appellant Yellow Manufacturing Acceptance Corporation (YMAC) appeals from a negative judgment in favor of defendant-appellee Estal M. Voss (Voss) in an action to collect a deficiency pursuant to the purchase, default, repossession and resale of a 1962 GMC tractor.

In its brief, YMAC presents the following issues for review:

1. Whether the court erred in permitting Voss to testify as to the substance of a conversation between himself and an agent of YMAC.
2. Whether the judgment of the court was contrary to the evidence and therefore contrary to law.

The facts of this case are as follows:

On November 20, 1961, Voss purchased a new 1962 model GMC tractor from Key GMC Truck Sales, Inc., Cincinnati, Ohio. In connection with the sale, Voss entered into a financing agreement bearing the caption "Chattel Mortgage" calling for payment of a deferred balance of $17,277.12 due in 36 monthly installments. The dealer in turn assigned this agreement to the plaintiff, YMAC.

On the date of the sale, an Ohio Certificate of Title was issued to Voss with YMAC's "Chattel Mortgage" listed thereon as the first lien. Voss subsequently applied for and obtained an Indiana Certificate of Title which YMAC retained in its files.

Voss became delinquent after paying installments totaling $4,319.28. After talking with plaintiff's agent Pennoff, Voss surrendered the tractor to the dealer Key. On December 19, 1962, Voss was notified by registered mail that the tractor would be sold at public auction if not redeemed. Notice of the sale was posted on the tractor and on two bulletin boards at the dealer's premises.

On January 4, 1963, the tractor was sold to plaintiff YMAC, the sole bidder, for $4400.00. YMAC then resold the tractor to an Indianapolis GMC dealer for $5800.00.

The balance due on the contract when Voss surrendered the tractor was $12,957.84. Credited to the balance due were unearned finance charges of $1,427.20 and the sale price of $5800.00 to the Indianapolis dealer. Repossession charges of $109.86 were then added leaving a deficiency balance of $5840.50.

Suit was brought to recover the deficiency balance on April 1, 1963.

The cause was finally tried on June 23, 1969 and the court took its ruling under advisement. On September 20, 1971, YMAC filed its Motion to Withdraw Issues from the Judge, which was granted, and a Special Judge was subsequently appointed to rehear the cause.

In addition to the deficiency balance, YMAC sought interest and attorney fees pursuant to the terms of the "Chattel Mortgage" in the respective sums of $4477.72 and $876.08.

Following trial by court on September 14, 1972, judgment was entered for Voss on YMAC's complaint, and this appeal follows:

YMAC first argues that the trial court erred in permitting Voss to testify as to the substance of a conversation between himself and one Pennoff, who was at that time a representative of YMAC.

The evidence reveals that after Voss fell behind in his payments, Pennoff traveled to Voss' home in Milan, Indiana, to speak with him concerning the delinquency.

Over YMAC's objection, the court permitted Voss to relate the substance of their conversation as follows:

"Q. Do you recall that conversation?
A. Yes, I do. Mr. Pennoff come out and he said you know you are a couple of payments behind on this truck and he said we are going to have to do something about it. I told him we have had so many repairs and so forth we have not been able to keep it running. And the Key GMC would do nothing to help us, the truck was

actually under warranty yet but we had to stand all the expenses ourselves. He said, 'Well, I am not trying to get the truck but we have to have some satisfaction before I go back to the Company.' He said, 'Why don't you surrender the truck while it is still a new truck that way it will bring enough money to pay off what you owe on it and they will not come back at you for the difference.' He said, 'If you will bring it in within two or three days voluntarily why you won't have any more trouble, you won't hear any more from us.' So I said, 'Well, I might as well do that and go out and buy another truck.'

Q. The truck was about a year old at that time?

A. Yes, it was a little bit over a year, about thirteen months.

Q. Now, after he had told you that if you would surrender the truck you would have no more trouble, that was your understanding you had with him?

A. Yes."

YMAC's objection to the admission of this testimony on the grounds that it was hearsay and was irrelevant was overruled.

We must conclude that YMAC has waived any claimed error with respect to the admission of this testimony due to its failure to preserve the issue in its Motion to Correct Errors. Trial Rule 59 (G) ; *McAfee* v. *State ex rel. Stodola* (1972), 258 Ind. 677, 284 N.E.2d 778; *Martin* v. *Grutka* (1972), 151 Ind. App. 167, 278 N.E.2d 586; *Adkins* v. *Elvard* (1973), 155 Ind. App. 672, 294 N.E.2d 160.

Appellant next argues that the judgment of the court is contrary to the evidence and contrary to law.

Since YMAC seeks reversal of a negative judgment, it bears the burden of persuading this court that the trial court's decision is contrary to law. A negative decision against one with the burden of proof may not be attacked on the grounds that it is not sustained by sufficient evidence. *Senst* v. *Bradley* (1971), 150 Ind. App. 113, 275 N.E.2d

573; *State Farm Life Ins. Co.* v. *Spidel* (1964), 246 Ind. 458, 202 N.E.2d 886.

The appropriate standard of review to be applied was enunciated in *Senst, supra,* as follows:

"It is only where the evidence is without conflict and leads to only one conclusion and the Trial Court reached a contrary conclusion that the decision will be disturbed as contrary to law i.e. that is where it affirmatively appears that reasonable men could not have arrived at the same judgment or conclusion. See Edwards v. Wyllie, 246 Ind. 261, 203 N.E.2d 200 (1965). In this context, this Court, as a reviewing Court, will consider only the evidence most favorable to the decision of the Trial Court. See Walting v. Brown, 139 Ind. App. 18, 211 N.E.2d 803 (1965) and Jones v. State, 244 Ind. 682, 195 N.E.2d 460 (1964)."

See also, *Minniear* v. *Estate of Metcalf* (1972), 153 Ind. App. 213, 286 N.E.2d 700; *Columbia Realty Corp.* v. *Harrelson* (1973), 155 Ind. App. 604, 293 N.E.2d 804.

Through the testimony of its witness Raymond G. Reams, YMAC admits that Pennoff was acting as its agent. However, it is argued that Pennoff had no authority to represent to Voss that if he surrendered the tractor YMAC would not seek a deficiency judgment against him.

In *Voorhees-Jontz Lumber Co.* v. *Bezek* (1965), 137 Ind. App. 382, 209 N.E.2d 380, this court quoted the following rule from *Farm Bureau Mut. Ins. Co.* v. *Coffin* (1962), 136 Ind. App. 12, 186 N.E.2d 180:

"When one has the appearance of a general agent the law is clear that a third person dealing with him is not bound to inquire into his specific authority, nor is the principal protected by secret limitations upon the authority of such an agent. The reason for the rule is that where one of two innocent persons must suffer because of the betrayal of a trust reposed in a third, the one who is most at fault should bear the loss. Since the principal put the agent in the position of trust, he is the one who should suffer the detriment."

In our opinion, the trial court could have reasonably found that Pennoff bore the status of a general agent. Reams

testified that Pennoff was "offce manager" of YMAC and "had authority to act in the repossession matter." In at least two cases in this jurisdiction, persons bearing the title of "manager" have been found to be general agents. *Voorhees-Jontz Lumber Co.* v. *Bezek, supra; Glazer* v. *Hook* (1920), 74 Ind. App. 497, 129 N.E. 249.

The results produced by acts and declarations of an agent acting within the apparent scope of his authority cannot be escaped by the principal. *Lemond* v. *Astrike* (1933), 97 Ind. App. 106, 185 N.E. 867. We believe the court could have reasonably determined that Pennoff's representations fell within the apparent scope of his authority. Testimony revealed that on occasion YMAC entered into agreements whereby deficiencies were waived in return for voluntary surrender of a vehicle by a delinquent purchaser. Hence, Pennoff's representation could not be considered an extraordinary act.

YMAC argues that Voss should have taken steps to ascertain whether Pennoff had authority to make any such representations.

However, it is clear that a party has no duty to inquire concerning the authority of a general agent. *Farm Bureau Mut. Ins. Co.* v. *Coffin, supra.*

On the basis of the above, it is apparent that reasonable men could differ as to whether Pennoff's representations and Voss' reliance on those statements, operated to discharge Voss from liability for a deficiency after sale of the tractor. Since conflicting inferences could have been drawn from the evidence we cannot conclude that the decision of the trial court is contrary to law.

Affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 303 N.E.2d 281.