RALPH RAYMOND STORM AND RALPH THOMAS STORM *v.* ROBERT MARSISCHKE AND ALBERT F. WAGNER, INDIVIDUALLY AND D/B/A DUANE CONSTRUCTION COMPANY; AND McCORMICK LUMBER CO., INC., AN INDIANA CORPORATION; DUANE COMPANY, INC., AN INDIANA CORPORATION.

[No. 272A64. Filed December 28, 1973.]

*Richard P. Watson, John C. Carvey, Carvey, Watson & McNevin,* of Indianapolis, for appellants.

*Ted B. Lewis, Samuel A. Fuller, Richard L. Fairchild, Stewart, Irwin, Gilliom, Fuller & Meyer,* of Indianapolis, for appellee McCormick Lumber Co., Inc.

PER CURIAM—Ralph R. Storm and his son, Ralph T. Storm (the Storms), owners of land in Morgan County, entered into a written contract with Robert Marsischke and Albert F. Wagner d/b/a Duane Construction Company (Construction Co.) for the construction of two apartment buildings on their land. Craig Winters, an employee of McCormick Lumber Company, Inc. (Lumber Co.), arranged for the execution of the contract, but the defendant Lumber Co. was not a party to the writing. Erection of the buildings was never completed to Storms' satisfaction. They brought an action for damages

against Marsischke, Wagner, Construction Co., and Lumber Co., alleging breach of contract.

Following the entry of a default judgment against Marsischke, Wagner, and Construction Co., a trial without jury was commenced on the Storms' second amended complaint against Lumber Co. At the conclusion of the plaintiffs' evidence, defendant Lumber Co. moved for dismissal and judgment pursuant to Trial Rule 41(B), IC 1971, 34-5-1-1.[1] The court sustained the motion and entered judgment for the defendant.

What is before us in the appeal is fairly stated in the appellants' summary of argument, as follows:

> "Plaintiffs' (appellants here) position is that considering the evidence and reasonable inferences thereon most favorable to Plaintiffs that they established that defendant, McCormick Lumber Company, Inc., acting through its agent, Craig Winters, contracted to build two (2) apartment buildings for Plaintiffs in Mooresville, Indiana, which he had actual authority or apparent authority to negotiate and that it failed to complete the contract on time or otherwise, and that the work was so poorly performed that Plaintiffs suffered diminution of value and were faced with substantial numbers of liens, of suppliers and laborers on the premises, which together with the moneys paid out, greatly exceeded the contract price.

---

1. Trial Rule 41(B) reads as follows:

"Involuntary dismissal: Effect thereof. After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that *considering all the evidence and reasonable inferences therefrom in favor of the party to whom the motion is directed, to be true*, there is no substantial evidence of probative value to sustain the material allegations of the party against whom the motion is directed. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff or party with the burden of proof, the court, when requested at the time of the motion by either party shall make findings if, and as required by Rule 52(A). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision or subdivision (E) of this rule and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits." (Our emphasis.)

"Defendants' (Appellees herein) position is that the consideration of the evidence and reasonable inferences thereon most favorable to Plaintiffs that they failed to establish that the agent Craig Winters had actual or apparent authority to bind his principal the defendant, to such a construction contract, and therefore Plaintiffs must suffer the loss caused by its agent.

"In summation, it can be said that Plaintiffs contend that their evidence showed that Craig Winters was a general agent, or at the very least, had the appearance of a general agent and that as innocent third persons they should not be made to suffer for the consequences of the acts of the agent who may have exceeded his authority, but the principal (defendant) who installed him in a position where he could prey upon innocent third persons should bear the loss."

Looking first to the concept of apparent authority, it is axiomatic that such authority exists *only where there is a manifestation by the principal to a third party* which causes the third party reasonably to believe that the particular person with whom the third party is dealing has the authority to enter into negotiations or to make representations on behalf of the principal. *The State Life Insurance Co.* v. *Thiel* (1939), 107 Ind. App. 75, 20 N.E.2d 693; *Kody Engineering Company, Inc. et al.* v. *Fox and Fox Insurance Agency, Inc.* (1973), 158 Ind. App. 498, 303 N.E.2d 307, 39 Ind. Dec. 537. Such a manifestation by the principal may be found when the principal holds out an agent as a general agent and the third party reasonably believes that the authority exhibited is the type usually held by one in such a position;[2] or, where the principal clothes or allows a special agent to act with the appearance of possessing more authority than is actually conferred. See: *Farm Bureau Mutual Life Insurance Company* v. *Coffin* (1962), 136 Ind. App. 12, 186 N.E.2d 180. Thus, to prove

2. See: *Yellow Manufacturing Acceptance Corporation* v. *Voss* (1973), 158 Ind. App. 478, 303 N.E.2d 281, 39 Ind. Dec. 505, ("office manager"); *Big Wheel Restaurants, Inc.* v. *Bronstein* (1973), 158 Ind. App. 422, 302 N.E.2d 876, 39 Ind. Dec. 455, (Manager—sole representative); *Voorhees-Jontz Lumber Co.* v. *Bezek* (1965), 137 Ind. App. 382, 209 N.E.2d 380 (Company's General Manager).

the existence of apparent authority, it is necessary to establish some conduct on the part of the principal which created the appearance of authority. The representations of the agent will not suffice, for it is the "well established rule that agency cannot be proven by the declarations of the agent, alone." *Pan American World Airways, Inc.* v. *Local Readers Service, Inc.* (1968), 143 Ind. App. 370, 377, 240 N.E.2d 552, 556, 15 Ind. Dec. 429, 435.

Our review of the record fails to show any substantial evidence of probative value to sustain the existence of apparent authority.

There is no evidence upon which it can be said Craig Winters was a general agent. The only evidence on this point is an attempt on the part of Lumber Co.'s counsel to stipulate that Winters was an "outside salesman". Though the statement establishes that Winters was an employee of Lumber Co., there is no evidence that establishes the capacity in which he was employed. Consequently, it cannot be said that Lumber Co. put Winters in a position which would allow a third party reasonably to believe that the authority exhibited is the type normally held by one in that position.

Nor can we find any evidence to support the proposition that Lumber Co. clothed Winters with the appearance of authority. A summary of appellants' evidence on this point reveals that Winters was a man of considerable activity. He contacted the Storms after learning of the proposed construction through a trade magazine, requested an appointment and procured blueprints upon which to submit a bid. At a second meeting Winters introduced the Storms to Marsischke and Wagner, representing that if Lumber Co. was the successful bidder Construction Co. would be the contractor. Further negotiations resulted in an approval of financing and the subsequent execution of the construction contract. The contract clearly identified "DUANE CONSTRUCTION COMPANY as General Contractor, by Robert Marsischke and Albert F. Wag-

ner". When Winters was asked by the Storms why the name of McCormick Lumber Company did not appear on the contract, his response was that Lumber Co. normally conducted its business in this manner.

Appellants suggest that Winters' explanation was consistent with the authority he had already exhibited and supported by his actions at the job site during the construction. Actions such as frequent visits to the project, the driving of a McCormick Lumber Company car, the removal of a premature delivery of roofing and his attempts to reconcile the eventual construction problems between Construction Co. and the Storms.

Though Winters' activities give rise to a suspicion of involvement on the part of Lumber Co., there exists no evidence of any conduct on the part of the principal creating an appearance of authority. Once the statements and representations of Winters are removed, there remains nothing which establishes authority to enter into a contract on behalf of Lumber Co. *Pan American Airways, supra; Holland* v. *Farrier* (1921), 75 Ind. App. 368, 130 N.E. 823.

The appellants present a more persuasive argument by asserting that Winters possessed inherent agency power to bind Lumber Co. to the contract. Unlike apparent authority, inherent agency power exists apart from any manifestation by the principal and rests solely in the agency relationship. Though we are unaware of any Indiana case which expressly recognizes this principle,[4] the A.L.I. Restatement (Second) of Agency § 8A (1957) defines it as follows:

> "Inherent agency power is a term used in the restatement of this subject to indicate the power of an agent which is derived not from authority, apparent authority or estoppel, but solely from the agency relation and exists for the pro-

---

4. It is possible to say that the rationale underlying the decision in *Farm Bureau Mutual Insurance Co.* v. *Coffin* (1964), 136 Ind. App. 12, 186 N.E.2d 180, is the same rationale underlying the principle of inherent agency power. *See,* W. Seavey, LAW OF AGENCY § 59D, at 108 n. 40 (1964).

tection of persons harmed by or dealing with a servant or other agent."

Of the situations the Restatement finds this type of power to exist, appellants contend this case falls within "that in which a general agent does something similar to what he is authorized to do, but in violation of orders."[5] We again note that appellant has failed to present any evidence upon which it can be said that Winters was, in fact, a general agent. Thus there is no basis for the proposition that the authority exhibited by Winters would be within the normal scope of authority of an agent in his position absent any restrictions.[6]

The final argument presented by the appellant is that the trial court erred in finding Lumber Co. "was not a partner or joint venturer" with Construction Co. in the building of the apartments.

The only evidence entered at trial on this point was a copy of the articles of incorporation of Duane Company, Inc., successor corporation to Duane Construction Company, formed in February of 1969. The directors of the corporation are shown to be Marsischke, Wagner and John C. McCormick, the latter being president of McCormick Lumber Company, Inc. A second corporation, Speedway Buildings Products, Inc., was also formed on the same day and its articles of incorporation show the identical board of directors. From this evidence, appellant contends that it is reasonable to assume the existence of a partnership type of relationship between Lumber Co. and Construction Co.

In *Hart, Schaffner & Marx* v. *Campbell* (1942), 110 Ind. App. 312, 321, 38 N.E.2d 895, 899, this court recognized:

> "[T]hat there are cases where, to prevent fraud or injustice, it is necessary to disregard the fiction of distinct corporate existence, and to hold as a matter of equity

5. Restatement (Second) of Agency § 8A, Comment b. See also § 161, *Id.*
6. Though a special agent has been recognized as possessing inherent agency power, see § 161A of the Restatement (Second) of Agency, *supra*, the question has not been presented.

that such separate legal entity does not exist. *Feucht* v. *Real Silk Hosiery Mills, Inc.,* 1938, 105 Ind. App. 405, 12 N.E.2d 1019."

It was held, however, that the fact the officers of one corporation were also officers of a second corporation, "would not and could not, in and of itself, afford a sufficient basis upon which to conclude" that a separate legal entity does not exist. *Id.*

Our review of the record fails to persuade us that the trial court should have disregarded the corporate entity. There is no evidence here, as there was in *Voorhees-Jontz Lumber Co.* v. *Bezek* (1965), 137 Ind. App. 382, 209 N.E.2d 380, of an arrangement or a history of prior practice which would lead to the conclusion that Lumber Co., either itself or through its agent, referred parties to Construction Co. under the representation that the two worked together. Neither the statements of Winters nor identity of officers are sufficient to find the existence of a joint venture.

Appellant, in a second and supplemental motion to correct errors, produced advertisements which appeared in the Indianapolis Star during the month of October, 1971, stating that a certain development in Hancock County was built by Mc-Cormick Lumber Company, Inc. We fail to see how advertisements appearing almost three years after the contract in question was executed could possibly have been relied on by the appellants in their negotiations with Winters. See 3 Am. Jur. 2d, Agency § 75, p. 478.

When the evidence of the appellant is viewed *in toto,* we find that, aside from the articles of incorporation, it consists solely of the representations and actions of Craig Winters. During the period of contract negotiations the Storms never found it necessary to verify the authority of Winters, even when confronted with a building contract which, on its face, did not conform to the representations made by a man whose position of employment is not revealed by the record.

There being no substantial evidence of probative value to support any theory of liability by Lumber Co. to plaintiffs, it was not error for the trial court to sustain the defendant's 41(B) motion to dismiss.

The judgment is affirmed.

NOTE.—Reported at 304 N.E.2d 840.