Marianne GROSAM and Karen Grosam
d/b/a M & K Janitorial Service,
Plaintiff-Appellant,

v.

LABORERS' INTERNATIONAL UNION
OF NORTH AMERICA, LOCAL 41,
Defendant-Appellee.

No. 3–185A5.

Court of Appeals of Indiana,
Third District.

March 5, 1986.

Rehearing Denied May 8, 1986.

---

Robert E. Stochel and John M. O'Drobinak, P.C., Crown Point, for plaintiff-appellant.

Lee J. Christakis, Gary, and Ellen S. Podgor, Crown Point, for defendant-appellee.

GARRARD, Judge.

Marianne Grosam and Karen Grosam, doing business as M & K Janitorial Service (M & K), appeal an adverse judgment in their suit for breach of contract against Laborers' International Union of North America, Local 41 (Local 41).

The Grosams claim the trial court erred in finding that a janitorial service contract between M & K and Local 41 was not valid and binding, and that M & K was not performing as agreed.

M & K is a family business owned by Marianne and Walter Grosam and their daughter, Karen. Walter is a long time member of Local 41, and it was through his contact with Local 41's former business manager, Hoyle Green, that M & K first obtained the job of cleaning Local 41's offices and hiring hall. At first, M & K worked without a contract, but in February of 1981, Walter and Hoyle Green executed a contract which called for the union offices to be cleaned a minimum of twice a week and the hiring hall to be cleaned a minimum of five times a week. The contract was for one year, and M & K was paid $800.00 a month for its services. When that contract expired M & K continued to clean the union hall. In October 1982, Walter prepared another contract which was similar to the first one except that it reduced the number of cleaning days for the hiring hall from five to four and extended the term of the contract to three years. Although the contract was dated October 1, 1982, it was not executed until sometime in late May or early June, 1983. Charles Bowers, the outgoing business manager of Local 41, signed the contract shortly before he left office after he had been defeated for re-election.

By a letter dated July 7, 1983 Don Hamilton, the newly elected business manager, terminated M & K's services due to "unsat-

isfactory work." The letter also noted that Charles Bowers "had no authority to sign a contract beyond his term of office."

M & K's complaint alleged that Local 41 had contracted through its agent Charles T. Bowers for janitorial services from October 1, 1982 to October 1, 1985 and that through its agent Don Hamilton, Local 41 had breached that contract by terminating it before its expiration date. Local 41's answer was a general denial of the allegations. Later, in an affidavit by Don Hamilton, submitted in opposition to M & K's unsuccessful motion for summary judgment, the union claimed that the contract was not executed on October 1, 1982 but was "fraudulently" executed in July of 1983; that at the time of execution Charles Bowers had no authority to contract for M & K's services; and that in any event Bowers had no authority to bind Local 41 to any contract after June 3, 1983 (presumably the date on which Bowers was defeated for re-election as business manager).

The trial court rendered judgment against M & K. The court found, *inter alia,* that Local 41's constitution required all official documents to be executed by the president and the secretary-treasurer of the union and that all business of the union had to be passed on by the executive board and approved by the membership. The court found that the October 1, 1982 contract had not been executed or approved in the prescribed manner and concluded that the contract was not enforceable. Moreover, the court concluded that Walter Grosam, as a member of Local 41, knew or should have known of those constitutional requirements for the execution of contracts.

When findings of fact and conclusions of law are requested by the parties, we will not set aside the judgment premised thereon unless it is clearly erroneous. The findings must disclose a valid basis for the legal result reached in the judgment, and evidence at trial must support each of the specific findings. *Campins v. Capels* (1984), Ind.App., 461 N.E.2d 712, 717. Of

course, we neither reweigh the evidence nor judge the credibility of the witnesses. We will reverse only when the evidence is uncontradicted and supports no reasonable inferences in favor of the decision. *Burnett v. Heckelman* (1983), Ind.App., 456 N.E.2d 1094, 1097.

M & K claims the October 1982 contract was valid either because Charles Bowers, as business manager and the recognized representative of the union, had at least apparent authority, if not actual authority, to enter into the contract; or because the union ratified the contract by accepting the benefits and by failing to repudiate it.

Since the constitution of the union clearly requires that the president, along with the secretary-treasurer, sign all official documents, there appears to be no question that the business manager did not have actual authority to execute the contract on behalf of Local 41. An agent may, nevertheless, bind his principal if he acts within the scope of apparent authority. *Storm v. Marsischke* (1973), 159 Ind.App. 136, 304 N.E.2d 840, 842; *Kody Engineering Co., Inc. v. Fox & Fox Ins. Agency, Inc.* (1973), 158 Ind.App. 498, 303 N.E.2d 307, 311. Apparent authority is that authority which a principal holds out his agent as possessing or permits him to exercise or to represent himself as possessing, under such circumstances as to estop the principal from denying its existence. 21 C.J.S., *Agency* Section 157, p. 785.

M & K points to the following facts in support of finding apparent authority for the execution of the October 1982 contract: the business manager is responsible for overseeing the operations of the union hall, including the cleaning of the premises; it was former business manager Hoyle Green who executed the February 1981 contract; at no time did any union officer or member suggest that the first contract was not valid because of the business manager's lack of authority; M & K's services and monthly payments therefore were ap-

proved by the executive board and membership during the term of the contract as well as after expiration of the contract.[1] M & K argues that on the basis of these facts it was reasonable to believe that Charles Bowers had the authority to execute the October 1982 contract for janitorial services, and that the union should be estopped to deny that authority.

The doctrine of apparent authority upon which M & K relies is premised in equity. It is based upon the principle that where one of two innocent parties must suffer from the wrongful conduct of another, the loss should fall upon the one who, by his conduct, created the circumstances which enabled the third party to perpetrate the wrong and cause the loss. 3 Am.Jur.2d *Agency*, Section 76. Thus, it is critical to the application of the doctrine that the party dealing with the agent reasonably believes that the agent is acting with authority. Where he knows, or should know, the agent is exceeding his authority, the principal will not be bound. *See Herald Telephone v. Fatouros* (1982), Ind.App., 431 N.E.2d 171; *Burger Man, Inc. v. Jordan Paper Products, Inc.* (1976), 170 Ind.App. 295, 352 N.E.2d 821; *Storm v. Marsischke* (1973), 159 Ind.App. 136, 304 N.E.2d 840 (all stating requirement of reasonable belief); 3 Am.Jur.2d *Agency*, Sections 75, 78.

Here Walter Grosam, who was one of the partners in M & K and who negotiated the contract in question, had been a member of the defendant union for twenty-five years. The trial court concluded that he either had actual knowledge or was bound to know in the exercise of reasonable care of the limitations already referred to that were imposed by the union's constitution. We cannot say that no reasonable factfinder could have drawn that conclusion. We therefore agree that the judgment was not erroneous under a proper application of the doctrine of apparent authority. Moreover, to the extent that

---

1. We emphasize that the validity or invalidity of the February 1981 contract is not at issue here, and we express no opinion as to whether the contract was valid on the basis of either apparent authority or ratification by the union.

estoppel might be distinguished from the doctrine of apparent authority, the court's finding that Grosam knew or should have known of the limitations imposed by the constitution again precludes reasonable reliance.

■ Neither can it be said that the evidence established a ratification of the written three year contract. Admittedly, the contract was not executed until a month prior to the termination. At least inferentially the newly elected business agent acted promptly in disavowing it. The evidence of M & K's past performance is equivocal at best since they worked for many months on an apparently at will basis. Thus, such work did not necessarily charge the union with notice of the new three year contract.

Since the judgment is sustainable upon this basis, we need not address the alternative issue concerning faulty performance.

Affirmed.

HOFFMAN, J., concurs.

STATON, P.J., dissents and files separate opinion.

STATON, Presiding Judge, dissenting.

I dissent from the Majority Opinion since there is no evidence to support the trial court conclusion "that Walter Grosam, as a member of Local 41, knew or should have known of those constitutional requirements for the execution of contracts." This is a presumptive conclusion on the part of the trial court which cannot be supported by authority or by the evidence. I would reverse the judgment and order judgment entered for Grosam.

There was no evidence whatsoever that Grosam knew of the requirements for execution and approval of contracts. In fact Grosam was asked on cross-examination if he was familiar with the constitution and bylaws of Local 41. He replied, "No. I go out there and work." He was asked, "Do you know anything about the constitution saying that it's the president and the secretary-treasurer who should sign all official documents?" "No, sir." "Did you ever ask Hoyle Green about that in 1981?" "No, sir. He asked me if I wanted a job and gave me a contract." Grosam did not know if either contract was brought before the executive board or the membership nor was he even sure whether Hoyle Green was president in 1981 or who was the president in 1982. No one ever told him that the business manager did not have authority to execute contracts with M & K. He testified that in the twenty-five years that he was with the union the business manager always took care of it." Hoyle Green took care of it for four years, Charles Bowers took care of it, and now Don Hamilton is taking care of it ..." Grosam testified that in October, 1982 Bowers told Grosam to get a contract written up and Bowers verified that they discussed the contract at that time. Bowers testified that he believed he had the authority to sign the contract. Don Hamilton testified that in the past it had been up to the business manager to hire and fire employees without necessarily following strict approval procedures.

To hold that Grosam knew or should have known what procedures were required in the face of such a long standing course of dealing on the part of union officials themselves is unsupported by any evidence.

The key to apparent authority is that the appearance of authority has been caused by some conduct on the part of the principal. *Storm v. Marsischke* (1973), 159 Ind. App. 136, 304 N.E.2d 840, 842. The third party must reasonably believe that the authority exhibited is the type usually held by one in such a position. *Yellow Manufacturing Acceptance Corp. v. Voss* (1973), 158 Ind.App. 478, 303 N.E.2d 281.

I would hold that it was entirely reasonable for Grosam to believe that business manager Charlie Bowers had the authority to contract with M & K and that the union may not now deny that authority in order to avoid the contract. I also note that the union produced no evidence whatsoever that a business manager, or any other officer for that matter, could not contract for

services which extended beyond his term of office. This was, in fact, the union's original claim in its letter of termination to M & K, rather than the blanket denial of all authority adopted later.

Though the evidence was conflicting on the question of when the contract was actually signed—before the election or after Bowers was defeated—it was uncontroverted that Bowers signed the contract before he left office and Don Hamilton was sworn in. There is nothing to indicate that the business manager's authority and responsibilities terminate in the interim between the election and the swearing in of new officers. Even if Grosam believed M & K was more likely to receive favorable treatment from Bowers than from the new business manager, that does not negate his belief that Bowers had the authority to execute the contract. Since the results produced by the acts and declarations of an agent acting within the apparent scope of his authority are binding upon the principal, *Yellow Manufacturing, supra* 303 N.E.2d at 284, it is not necessary to analyze M & K's claim that the union ratified the contract.

Because I would hold that the October, 1982 contract was valid, I proceed to determine whether the evidence supports the trial court's finding that M & K was not performing according to the terms of *that* contract.

The contract provided for a minimum of two cleanings a week in the office portion of the union building and a minimum of four cleanings a week in the hiring hall and adjacent restrooms. Marianne and Karen both testified that they came in twice a week and gave the entire building a thor-

ough cleaning. That takes care of the two times a week for the offices and accounts for two out of the four times for the hiring hall. Walter testified that he came in on mornings when the women had not been there the afternoon before, and he swept out the hiring hall and checked the adjacent restrooms for paper products. He said he came in "about two times" a week.

Charles Bowers testified that he would see Walter a couple times a week early in the morning sweeping out the hiring hall. That was the contract agreed to and although Don Hamilton testified that he thought M & K should clean more often because the premises were not clean enough, there was no evidence that M & K was not meeting at least the minimum requirements of the contract. It was absolutely uncontroverted that no one ever complained to M & K, to Marianne, Karen or Walter, about the quality of their work or the condition of the premises. Thus it is immaterial whether the hiring hall *needed* cleaning every day. Since the October, 1982 contract was valid, I cannot agree with the trial court's conclusion that M & K was required to perform with the frequency or in accordance with the standards provided or implied under the February, 1981 contract. They were required to perform according to the 1982 contract and they did.

I would reverse the judgment and order judgment entered for Grosam.