UNITED THEOLOGICAL SEMINARY,
Appellant (Plaintiff Below),

v.

The ESTATE OF Ardath Y. BURKHART,
Deceased, and William F. Welch, Executor, Appellees (Defendants Below).

No. 2–585–A–175.

Court of Appeals of Indiana,
Second District.

June 30, 1986.
Rehearing Denied Aug. 6, 1986.

Alan H. Lobley, Ice, Miller, Donadio & Ryan, Indianapolis, for appellant.

McHale, Cook & Welch, P.C., Indianapolis, for appellees.

SULLIVAN, Judge.

United Theological Seminary ("UTS") appeals an adverse judgment upon its claim against the estate of Ardath Y. Burkhart ("Estate"). The claim sought to enforce a charitable pledge alleged to have been made by Mrs. Burkhart in the amount of $25,000. The claim was disallowed by the Estate on May 16, 1984, and the adversary claim was heard by the trial court on December 21, 1984. Upon timely motion by UTS, the trial court issued findings of fact denying the UTS claim upon several grounds.

1. Burns Code Ed.1973.

UTS's appeal presents the following issues:

(1) Whether the trial court erred in determining that Horace E. Smith and Jeanne B. Jensen were incompetent witnesses under the Dead Man's Statute, Indiana Code Sections 34–1–14–6 and 34–1–14–8.[1]

(2) Whether the trial court's finding, that Jeanne Jensen exerted undue influence in obtaining Mrs. Burkhart's offer to pledge $25,000, is unsupported by the evidence.

The following statement of facts is based primarily upon the trial court's findings and the recitation of facts found in both appellant's and appellees' briefs. Counsel for both parties are to be commended for the well-drafted and succinct presentation of the appeal.

UTS, located in Dayton, Ohio, is a school of the United Methodist Church for training clergy for the ministry of various religious denominations. Both Horace Smith and Burkhart served on the UTS Board of Trustees. Smith was Chairman of the Board. In May, 1983, the Development Committee of the UTS Board doubled the goal for total trustee contributions to $100,000 at Burkhart's suggestion. Thereafter, on August 6, 1983, Burkhart purportedly caused a letter to be sent to Horace Smith in which she offered to pledge $25,000 towards the goal of $100,000 if Smith would agree to match her contribution.

Jeanne Jensen's testimony, regarding the circumstances surrounding the making of this letter, was rejected by the trial court upon grounds that the testimony was prohibited by the Dead Man's Statute, *supra.* The trial court also concluded that even if Jensen's testimony were held admissible, Burkhart's pledge was unenforceable because it had been obtained through undue influence exerted by Jensen. The trial court found that Burkhart's weakened mental and physical condition, occasioned by intensive chemotherapy treatments for

lung cancer, had rendered her susceptible to such undue influence.

Horace Smith's testimony, also excluded, would have been that he called Burkhart and orally accepted her pledge challenge, shortly after receipt of her August 6 letter. His testimony was excluded upon grounds that Smith had acted in his capacity as chairman of the Board of Trustees in his dealings with Burkhart, that he was a necessary party to the issue, with an interest adverse to the Estate and therefore within the proscription of the Dead Man's Statute, *supra.*

Following her lengthy battle with cancer, Burkhart died on December 8, 1983. Her will was duly admitted to probate. Aside from a bequest to Girl Scouts of America, Burkhart made no other charitable bequests in her will.[2] During her lifetime, Burkhart made no effort to satisfy the $25,000 pledge to UTS. After her death, UTS attempted to collect the pledge amount contending that Burkhart had assumed a valid obligation which devolved upon her Estate.

The findings of fact and conclusions of law were issued at the request of the parties. Therefore, if those findings disclose a valid, legal basis for the judgment and there is sufficient probative evidence to support the findings, the judgment will be upheld. *Grosam v. Laborers' International Union of North America, Local 41* (1986) 3d Dist., Ind.App., 489 N.E.2d 656, *trans pending; Campins v. Capels* (1984) 4th Dist., Ind.App., 461 N.E.2d 712.

The trial court disqualified Smith and Jensen as witnesses on the basis that they were necessary parties as covered by I.C. 34-1-14-6, and as agents of an adverse party under I.C. 34-1-14-8. Following the disqualification, the trial court determined that without Smith and Jensen's testimony, there was insufficient evidence to establish that Burkhart had made a binding commitment to UTS.

Partially as a result of excellent briefing by the parties, the issue to be resolved is very clear. The controlling legal principle is also clear. The Dead Man's Statute is applicable in this case inasmuch as UTS's claim is against Burkhart's estate, is based upon a purported contract with the decedent, and is requesting judgment against the estate. *See State Farm Life Insurance Company v. Fort Wayne National Bank* (1985) 3d Dist., Ind.App., 474 N.E.2d 524, 527. At issue herein are two separate provisions of the statute, each of which is designed to protect estate assets from spurious claims by guarding against potentially false testimony by the surviving party of a transaction with the decedent. *Id.* at 526.

Indiana Code 34-1-14-6 provides in relevant part:

"In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator; *any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate....*" [Emphasis supplied.]

Indiana Code 34-1-14-8 provides:

*"No person who shall have acted as an agent in the making or continuing of a contract with any person who may have died, shall be a competent witness, in any suit, upon, or involving, such contract, as to matters occurring prior to the death of such decedent, on behalf of the principal to such contract, against the legal representatives, or heirs of the decedent, unless he shall be called by such heirs or legal representatives."* [Emphasis supplied.]

Application of either of these sections renders a witness incompetent to testify concerning matters which occurred during

---

**2.** Burkhart did, however, execute a codicil to her will in July of 1983, in which she bound her estate to fulfill a pledge to Meridian Street Unit- ed Methodist Church, in the event it was not satisfied during her lifetime. The pledge was paid in October, 1983.

the life of the decedent and which concern the matter being litigated. Both Jensen and Smith were called to testify in support of UTS's claim against the Estate. The testimony was conditionally admitted, with the trial court withholding its ruling on the Estate's objection that such testimony was barred. At the conclusion of the hearing, the trial court disallowed both witnesses' testimony.

Because we conclude that the Dead Man's Statute was properly applied in this instance, we do not reach UTS's contention regarding the finding of undue influence.[3] We do note, however, that the evidence underlying that finding reflects a substantial indication of Burkhart's deteriorating physical condition and mental frailty during the relevant time-span. *See Hill v. Jessup* (1966) 139 Ind.App. 467, 471, 220 N.E.2d 662, 665 (discussing the factors which determine the existence of undue influence). *See also In re Snyder* (1981) 1st Dist., Ind.App., 418 N.E.2d 1171.

■ With respect to the disqualification of Smith, UTS's argument can be summarized as follows: Two Indiana Supreme Court decisions support the assertion that a contract of the sort alleged herein is binding upon the respective parties to the contract and may be enforced by the third party beneficiary. *See Higert v. The Trustees of Indiana Asbury University* (1876) 53 Ind. 326, 329, 330 (stating that "mutual promises constitute mutual obligations, and are a sufficient consideration to support the promise of each [promisor]"), and *Davis v. Calloway* (1868) 30 Ind. 112, 114 (stating that a third party beneficiary may, upon acceptance of the contract, maintain an action to enforce the contractual terms). Assuming, as UTS argues, that the action herein seeks enforcement of a contract executed for UTS's benefit by Smith and Burkhart, nothing in either *Higert,* or *Davis, supra,* suggests that the prohibitions of the Dead Man's Statute are contingent upon the particular type con-

tract alleged to have been executed by the decedent. It is not the form of the transaction which results in disqualification, but rather the attempted enforcement of such contract by a surviving party to the transaction.

With regard to this dispute, we conclude that both UTS and Horace Smith are "parties" within the meaning of I.C. 34–1–14–6. By including both parties to the issue and parties to the record within its proscription, the statute encompasses a wider application than merely the named parties, i.e., plaintiff and defendant. Smith and Burkhart may have been the only promisors; however, as third party beneficiary of the alleged mutual promises, UTS is a real party in interest. An action for enforcement of contractual rights may only be brought by a person who suffers injury as a consequence of the breach, in this instance UTS. *Cook v. City of Evansville* (1978) 1st Dist., 178 Ind.App. 20, 381 N.E.2d 493, 494; Indiana Rules of Procedure, Trial Rule 17(A).

Strictly speaking, Horace Smith will receive no personal gain nor will he suffer a loss attributable to the entry of judgment against the Estate. However, his interest in this matter is nonetheless that of a principal party to the transaction at issue.

Disqualification of a witness pursuant to I.C. 34–1–14–6 requires the existence of the following requirements:

"a. The action must be one in which an administrator or executor is a party, or one of the parties is acting in the capacity of an administrator or executor;

b. It must involve matters which occurred within and during the lifetime of the decedent;

c. It must be a case in which a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator;

---

**3.** UTS does not challenge the findings of the court concerning the witnesses' credibility, nor does it address the court's conclusion that Smith

failed to accept Mrs. Burkhart's offer prior to her death, which extinguished the offer.

d. The witness must be a necessary party to the issue and not merely a party to the record;

e. The witness must be adverse to the estate and must testify against the estate." *State Farm Life Insurance, supra,* 474 N.E.2d at 526–7.

There is no dispute regarding the existence of the first three requirements. UTS sought judgment against the Estate for payment of a $25,000 pledge alleged to have been made, but not paid during Burkhart's lifetime.

With respect to requirement "d", the trial court properly disqualified Smith as a necessary party to the issue. In *Satterthwaite v. Estate of Satterthwaite* (1981) 4th Dist., Ind.App., 420 N.E.2d 287, 290, the court stated:

"A party to the issue means the parties between whom there is a controversy submitted to the court for trial, the parties who are litigating the particular issue against whom or for whom the court will render judgment. A party having an interest in the result is not automatically made a party to the issue."

UTS interprets this language to mean that only parties seeking judgment or defending against a potential judgment can be parties to the issue. We disagree.

The typical situation commonly concerns testimony by a witness or collateral participant to the transaction or matter in issue. The language in *Satterthwaite* is appropriate for such a situation, but is of limited assistance in the present dispute. A close reading of *Satterthwaite* discloses that the decision addressed the trial court's disqualification of two witnesses: the claimant against the estate and the claimant's mother, who was present at the time of the transaction between claimant and his father, the decedent. With respect to the mother-witness, the Fourth District held that the trial court erred in refusing her testimony, inasmuch as the mother-witness had merely been present during the transaction, and was not a party to the alleged agreement between the decedent and the claimant. The court emphasized that the mother-witness was not litigating the particular controversy and that the "matter involved could have been fully, completely and finally determined" without her testimony or status as a party. 420 N.E.2d at 290.

Thus, the determinative factor as to whether or not a witness is incompetent necessarily focuses upon whether the witness's participation in the claimed transaction was collateral or direct. In *Satterthwaite*, the witness-mother would have testified, but for the exclusion, that she was present and observed the consummation of the transaction between claimant and decedent. The claimant himself, however, was held to have been properly disqualified because his proffered testimony directly related to negotiation of the alleged agreement upon which his claim was based. 420 N.E.2d at 291. The court's conclusions in *Satterthwaite* were quite clearly based upon an analysis of the relationship of the proposed witness to the matter or transaction which gave rise to the legal controversy between the named parties.

In the case before us, the "issue" is whether Burkhart entered into a binding commitment to pay UTS $25,000. A necessary party to this issue is Horace Smith, the only "contracting" party besides the decedent. Without his testimony, there is no evidence from which a trier of fact could conclude that mutually binding promises were exchanged. The purpose of the Dead Man's Statute is to prevent "false testimony by a survivor by establishing a rule of mutuality which requires, when the lips of one party to a transaction are closed by death, the lips of the other party are closed by law." *Satterthwaite, supra,* 420 N.E.2d at 289. Horace Smith is not a competent witness to testify concerning his alleged contract with the decedent. The fact that Smith will not personally benefit from a judgment for UTS does not render the statute inapplicable. If anything, that factor would tend to bear upon the fifth requirement (e), set out in *State Farm Life Insurance, supra,* 474 N.E.2d at 526–7,

that the witness be adverse to the estate and testify against the estate.

In the context of this dispute, Horace Smith cannot be said to have acted out of purely personal concerns. As Chairman of the Board of Trustees, Smith is principally involved and charged with developing and implementing fiscal policy for UTS. From statements in the Board's minutes, to the effect that

> "alumni and trustee giving are good, but local relationships have not been cultivated so successfully,"
>
> "a key to success is a dedicated cadre of board of trustees who commit their talent and money," and
>
> "[a]ll trustee pledges should be made by September 30, 1983,"

the trial court could reasonably conclude that personal pledges and contributions were within a trustee's duties and that Smith's interest in these transactions merged with the interest of UTS.

UTS's interest is clearly adverse to the Estate's. UTS is incapable of acting on its own. It must rely upon its agents and officers to generate and cultivate the funding sources necessary for its operation. While Smith was no doubt motivated in part by personal charitable instincts in donating his services and funds to UTS, his agreement with Burkhart was unquestionably the result of efforts by UTS's governing body, the Board of Trustees, to increase the previous year's funding levels. As aptly stated in *State Farm Life Insurance Co., supra,* 474 N.E.2d at 527:

> "A corporation[4] works exclusively through the actions of its agents. When acting within the scope of corporate responsibility, the corporation's interests merge with the interests of the agents. The statute clearly contemplates that corporate agents who transact business with one later deceased possess an interest adverse to the estate."

Under these circumstances, the fact that UTS's claim is based upon a contract for the benefit of a third party does not preclude application of the Dead Man's Statute. As earlier stated, the focus of the statute is not upon the particular form of the transaction but rather upon the relationship of the potential witness to that transaction. *Satterthwaite, supra,* 420 N.E.2d 287. Smith's role in this matter is clearly not collateral. He is the surviving party to the transaction which is the basis of the claim against the Burkhart estate. The trial court did not err in determining that Smith was incompetent to testify.

The court also concluded that Jeanne B. Jensen was precluded from testifying by the Dead Man's Statute, both as an agent, I.C. 34-1-14-8, and as a necessary party to the issue, I.C. 34-1-14-6. UTS contends the trial court erred in excluding Jensen's testimony and argues that Jensen merely acted as "scrivener" in the making of Burkhart's challenge-pledge. Our review of the findings and supporting evidence supports the disqualification pursuant to I.C. 34-1-14-8.

For disqualification to occur according to this provision, it must first be shown that the agent *"actively negotiate[d] an agreement in his principal's place and on his behalf."* *Hoopingarner v. Bowser* (1972) 3d Dist., 153 Ind.App. 399, 287 N.E.2d 570, 573 (emphasis in original). The existence of an agent-principal relationship is not, of itself, sufficient to render the agent-witness incompetent. *Id.* More recently, in *State Farm Life Insurance Co., supra,* this court stated that a witness is disqualified if, while in the agency capacity, the witness "actively represented his principal in making or continuing the contract." 474 N.E.2d at 527. We agree with the analysis of *Hoopingarner* and *State Farm, supra.* Therefore, if the evidence and the reasonable inferences therefrom support the findings and conclusion that Jensen acted on behalf of UTS in the making of Burkhart's

---

**4.** We acknowledge that UTS is not a corporation. However, as the Estate notes, its structure is closely akin to that of a corporation. UTS conducts its affairs through its agents, officers and Board of Trustees. For purposes of the Dead Man's Statute, the lack of formal incorporation is of no consequence.

pledge, the disqualification will be upheld. *Hoopingarner, supra,* see also *Grosam v. Laborers' International Union, supra,* 489 N.E.2d 656.

As a preliminary matter, we note that the trial court's findings concerning Jensen's involvement in this matter appear to have been drawn almost exclusively from Jensen's conditionally admitted testimony which was later excluded by application of the Dead Man's Statute. When faced with a challenge to a witness' capacity to testify, the trial court must often make preliminary determinations based upon an examination of the prospective witness. *See,* e.g., *Peters v. State* (1984) Ind., 470 N.E.2d 708, 710, (a child under the age of ten is competent to testify if the trial judge determines pursuant to examination that the child knows the difference between truth and lying and understands the obligation to testify truthfully).

 In the matter before us, the trial court was required initially to determine whether Jensen acted as an agent, within the meaning of the Dead Man's Statute, in the making of Burkhart's pledge. Since Jensen is the only living person who can attest to the circumstances surrounding the purported challenge-offer, it was entirely proper for the trial court to consider her testimony for the limited purpose of determining competency.[5]

The trial court found that:

"14. On the morning of August 6, 1983, after her arrival at the Burkhart home for purposes of the aforesaid social visit, Mrs. Jensen initiated a discussion of a pledge by Mrs. Burkhart in the amount of $25,000 for UTS. No other third party was present during the course of such discussion, although Mrs. Burkhart's nurse was at the home during this time.

15. As a consequence of this private discussion, Mrs. Burkhart purportedly dictated to Mrs. Jensen a letter addressed to Horace E. Smith, as Chairman of the Board of Trustees of UTS, challenging him to make a contribution of $25,000 to UTS and, if he did so, indicating that she would also make a contribution of $25,000 to UTS to assist in causing UTS to achieve its goal of $100,000 in contributions from its Board of Trustees incident to its 1983–1984 fund raising campaign. This letter was identified and provisionally admitted at the hearing as Claimant's Exhibit 1.

16. Mrs. Jensen then typed this letter to Horace E. Smith on Mrs. Burkhart's typewriter and writing paper, caused Mrs. Burkhart to sign said letter, then drove Mrs. Burkhart to the main Indianapolis post office and placed said letter in the mail, all of which occurred by a time no later than that same afternoon of August 6, 1983.

17. Evidence was adduced at the hearing which indicated that Mrs. Burkhart was in a state of disorientation on the day and at the time of the discussion and handling of the pledge matter. For example, for the first time known to the witnesses, including Mrs. Burkhart's daughter, Gay Brown, Mrs. Burkhart misspelled her name on the said letter to Horace E. Smith and such misspelling is relevant evidence on the issue of Mrs. Burkhart's weakened physical and mental condition at that time. A further example of such disoriented condition is the fact that Mrs. Burkhart purportedly spoke of herself in the third person during this time.

18. After the execution of the letter to Horace E. Smith and during this same period of time on August 6, 1983, Mrs.

---

**5.** Although it is questionable whether this same testimony, excluded by operation of the Dead Man's Statute, could support a finding of undue influence, we can appreciate the trial court's dilemma. Here, the trial court obviously found that alternate bases existed for the entry of judgment in favor of the Estate and accordingly proceeded to detail those bases as findings. Having determined that the judgment was correctly premised upon the Dead Man's Statute, we perceive no harm resulting from the trial court's findings concerning undue influence and the credibility of witnesses, even though these findings may have been based entirely upon the excluded testimony.

Jensen purportedly took dictation of a second letter from Mrs. Burkhart which is in the style of a form letter addressed to "Dear Trustee". This letter was identified and provisionally admitted at the hearing as Claimant's Exhibit 2. Mrs. Jensen also typed this letter on the writing paper of Mrs. Burkhart and caused Mrs. Burkhart to sign her name thereto. The apparent purpose of this letter was to challenge other members of the Board of Trustees to make a pledge to UTS. However, this letter signed by Mrs. Burkhart was never sent to any trustee. Instead, Mrs. Jensen had individual letters typed and mailed to trustees after she, Mrs. Jensen, signed Mrs. Burkhart's name to them in handwriting disguised as Mrs. Burkhart's. Mrs. Jensen did not inform any of said trustees that the letter was not signed by Mrs. Burkhart but, instead, by Mrs. Jensen. The solicitation of the trustees for pledges was that of Mrs. Jensen and not Mrs. Burkhart." Record at 121–123.

As is readily apparent from the findings, Jensen was much more than a passive advisor, *Hoopingarner, supra,* 287 N.E.2d 570, or mere "scrivener", *Kenney et al. v. Phillipy* (1883) 91 Ind. 511. Part of Jensen's duties included the supervision and coordination of fundraising, public relations, and the "development and implementation of plans and programs to increase the current fund, the endowment funds and capital funds as well as the public relations functions." Record at 220. Jensen, a paid agent of UTS, not only initiated the discussion concerning a pledge by Burkhart, but she insured its consummation by taking dictation of the challenge-offer, typing it, procuring Burkhart's signature and driving her to the post office to mail that challenge to Horace Smith. Furthermore, there was testimony from Burkhart's daughter, Gay Brown, that Jensen persistently attempted to collect this pledge on behalf of UTS following Burkhart's death. There was ample evidence to support the findings and conclusion that Jensen is not a competent witness in this matter against the Estate because she acted exclusively on UTS's be-

half in procuring Burkhart's pledge. There was no error in excluding Jensen's testimony. *See State Farm Life Insurance Co., supra,* 474 N.E.2d 524; *Hoopingarner, supra,* 287 N.E.2d 570; *Dubois County Machine Co. v. Blessinger* (1973) 1st Dist., 157 Ind.App. 115, 299 N.E.2d 207.

The trial court's judgment is affirmed.

MILLER, J., (participating by designation) concurs.

SHIELDS, J., concurs in result.