Christina DONAVAN, Martha Vanstone, Mary Males, Lucille Manship, and Mary Males, As Trustee Under The Last Will and Testament Of Paul K. Manship, Deceased, d/b/a Paul–Lu Acres, Appellants,

v.

IVY KNOLL APARTMENTS PARTNERSHIP, An Indiana Limited Partnership, Appellee.

No. 06A04–8803–CV–99.

Court of Appeals of Indiana, Fourth District.

April 26, 1989.

Jack N. Vanstone, Vanstone & Krochta, Evansville, for appellants.

David B. Hughes, Indianapolis, Peter L. Obremskey, Parr Richey Obremskey & Morton, Lebanon, for appellee.

MILLER, Judge.

Christina Donovan, Martha VanStone, Mary Males, Lucille Manship, and Mary Males, as trustee under the will of Paul K. Manship, deceased. D/B/A Paul–Lu Acres (Sellers) appeal a judgment after a bench trial ordering them to specifically perform a purchase agreement to sell certain real estate in the Fishers. Indiana area to the Ivy Knoll Apartments Partnership (Buyer). We affirm.

### Issues

I. Whether the trial court erred in finding time was not of the essence in the performance of the purchase agreement?

II. Whether the trial court erred in finding notice of Buyer's waiver of the zoning condition given to attorney, Doug Floyd, was notice to the Sellers of the zoning condition waiver?

III. Whether the trial court erred in finding the condition precedent of acquiring R–7 zoning was for the sole benefit of—and therefore could be unilaterally waived by—the buyers?

IV. Whether the trial court erred in finding Sellers had waived any benefit of the zoning condition precedent by failing to make a reasonable or good faith effort to cause the zoning conditions to be satisfied?

V. Whether specific performance was the appropriate remedy under the circumstances?

### Facts

Ivy Knoll Apartments Partnership (Buyer), a limited partnership whose sole general partner is Thomas P. Murphy, entered into a Purchase Agreement in late November of 1985 with the defendants (Sellers) in this action who are the owners of certain real property in Fishers, Indiana. Ivy Knoll wishes to develop this property, which consists of approximately 57 acres, into apartment projects. This purchase agreement provided the price of the property at $10,000.00 per acre and contained various conditions precedent to closing the

sale. These conditions included written assurance the real estate was not in a flood plain, approval of existing farming agreements, satisfactory feasibility studies by its engineers, annexation of the real estate to the Town of Fishers, ree-zoning of the real estate to the Town of Fisher's "R–7" category, and written assurance from the Town of Fishers as to sewer and water availability and cost.

The annexation and re-zoning was to be applied for immediately upon acceptance of the offer and accomplished within ninety (90) days from date of application. Douglas B. Floyd, an attorney specializing in metropolitan development, was hired to obtain the annexation and re-zoning. The Sellers and Ivy Knoll agreed to split the expenses of annexation and re-zoning. Floyd recommended any re-zoning for the property not be pursued immediately because of the generally unfavorable political climate regarding development in Fishers, the existence of undeveloped land in Fishers already zoned R–7, and because he was representing others in a substantial R–7 project located across the street from the property in question. Floyd chose to pursue a "planned development" or "PD" zoning category that would permit a mixture of commercial, light industrial, and multi-family uses. The Sellers have contended they had no knowledge until late in this saga Floyd intended to pursue PD zoning instead of R–7. They have contended PD zoning is unacceptable to them because they do not wish commercial or industrial uses to be developed on the land which will adjoin land they will continue to own.

Floyd did not promptly file or prosecute either the proposed annexation or the re-zoning petition. The ninety (90) day period in which the annexation and re-zoning conditions were to be satisfied elapsed. On March 27, 1986, the parties executed an Amendment to the Purchase Agreement which provided for an additional one-hundred twenty (120) days to achieve the annexation and re-zoning conditions.

On July 2, 1986, Floyd filed a petition for annexation to the Town of Fishers. The local paper described the proposed mixture

of commercial, industrial, and multi-family uses. Males, one of the Sellers, telephoned Floyd to express displeasure with the mixed-use approach to re-zoning.

On or about July 7, 1986, a second Amendment to the Purchase Agreement was proposed to provide for additional time, until October 24, 1986, within which to satisfy the annexation and re-zoning conditions. Males stated the Sellers might not consent to the extension and that "the family" would meet to consider it. July 21, 1986, one day before the one-hundred twenty day extension expired, Murphy, of Ivy Knoll, telephoned Floyd and informed him that Ivy Knoll was waiving all remaining conditions and desired to proceed to closing. On July 25, 1986, Murphy called Males and reconfirmed to Males that Ivy Knoll had waived its remaining conditions and wanted to close the transaction. Males indicated to Murphy she was aware of Ivy Knoll's waiver of the conditions, and that "the family" would meet over the weekend to discuss the Purchase Agreement.

Ivy Knoll obtained a binder for title insurance and prepared a proposed draft of the land contract and sent a letter to the Sellers advising them it was ready, willing, and able to proceed with the closing. The Sellers met on or about August 7, 1986 and decided they would not close the transaction. The trial court found that this decision was "no doubt derived at least in part from the fact that Manship [one of the Sellers] had decided by February, 1986 that the Defendants had agreed to an inadequate purchase price for the Real Estate." On or about August 13, 1986, Sellers sent Ivy Knoll a letter which provided the following in pertinent part:

> The owners of Paul–Lu Acres met last Saturday and decided not to accept your offer to purchase the property without any conditions.... Since the original purchase agreement has expired, I believe this terminates our relationship.

The sale has never closed. Ivy Knoll's $10,000.00 in earnest money is still being held in escrow. Ivy Knoll has expended approximately $9,100.00 in land planning and engineering expenses in connection with its proposed project.

### Decision

*I. Whether the trial court erred in finding time was not of the essence in the performance of the purchase agreement?*

Ivy Knoll filed a written request for findings by the court pursuant to Ind.Rules of Procedure, Trial Rule 52. When the trial court is required to make special findings because of the request of a party, the court's failure to find upon a material issue shall not be resolved by presumption and may be challenged as lacking, incomplete or inadequate in form or content. T.R. 52(B)(2) and (D). Our standard of review in this event is well settled. We may *not* affirm the trial court's judgment on any ground which the evidence supports but must determine if the specific findings are adequate to support the trial court's decision. *Orkin Exterminating Co., Inc. v. Walters* (1984). Ind.App., 466 N.E.2d 55 (*trans. denied*).

However, the Sellers, appellants in this case, have not challenged any finding as lacking, incomplete or inadequate in any way, but, have challenged many findings as being erroneous. We will not reverse a trial court's judgment based on findings of fact and conclusions of law unless the findings or the conclusions drawn therefrom are *clearly erroneous. Rose Acres Farms, Inc. v. Greemann Real Estate* (1987), Ind.App., 516 N.E.2d 1095 (*trans. denied*). A judgment is clearly erroneous when it is unsupported by the conclusions of law, and the conclusions of law are clearly erroneous when they are unsupported by the findings of fact. Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Northwest Calf Farms, Inc. v. Poirier* (1986), Ind.App., 499 N.E.2d 1165 (*trans. denied*). Particular deference is given to the judgment of the trial court where the proceeding sounds in equity, and such judgments are clothed in a presumption of correctness. We are not at liberty to reweigh evidence and must af-

firm the trial court unless the evidence viewed in a light most favorable to the trial court leads uncontrovertibly to a conclusion opposite to the one reached. *Kokomo Veterans, Inc. v. Schick* (1982), Ind.App., 439 N.E.2d 639.

Sellers contend the Amended Purchase Agreement which provided "Purchaser shall have 120 days for rezoning approval from this date March 24, 1986" was a date stipulated by contract and this stipulated time became the "essence of the contract" which must be performed before their obligation to sell ripened.

The trial court made the following conclusion of law:

5. Ivy Knoll's waiver of the conditions of annexation and re-zoning was timely, in as much as such waiver was communicated to Floyd on July 21, 1986. Floyd was acting at all times material as the attorney both for Ivy Knoll and the Defendants, so that Floyd's receipt of Ivy Knoll's communication of its waiver of the conditions was tantamount to the receipt of such communication by the Defendants. Further, Males' receipt of like notice from Ivy Knoll on July 25, 1986 was timely in and of itself under the circumstances of this matter because the Purchase Agreement did not make time of the essence, the Defendants acted throughout the transaction (as well as for several weeks after July 25, 1986) as if time was not of the essence, the Defendants never acted at any time during the transaction as if it was their design to make it so, and the Defendants were in no way prejudiced or damaged by any claimed three (3) or four (4) day delay in Ivy Knoll's waiver of the conditions precedent of annexation and re-zoning.

■ Courts of equity do not generally view time as being of the essence of a contract unless it appears from its terms or the conduct of the parties that the design of the parties was to make it so. *Keller v. Fisher* (1856), 7 Ind. 718; 6 I.L.E. *Contracts* Sec. 229 (1958). Sellers could have proven time to be of the essence, either by 1) the terms of the instrument or 2) by evidence of circumstances establishing that the parties intended time as the controlling element of the agreement. *Bond v. Peabody Coal Co.* (1983), Ind.App., 450 N.E.2d 542.

■ There are no terms in the Purchase Agreement or the Purchase Agreement Amendment which state, in sum or substance, that time is to be the controlling element of the contract. The presence of a stipulated date in an agreement regarding the sale of land by which a certain performance is to be rendered does not impel an inference that time was to be of the essence. *Keller, supra;* 4 *Pomeroy, A Treatise on Equity Jurisprudence* Sec. 1408 (5th ed., 1941).

In *Koedding v. Slaughter* (8th Cir.1980) 634 F.2d 1095, a contract to sell a Holiday Inn was contingent upon the Buyer obtaining financing and a Holiday Inn franchise agreement within thirty (30) days. The Buyer effectively waived both conditions, which were for his sole benefit, even though he waived them after the passage of the thirty (30) days.

■ In the present case, Sellers allowed several days to pass after the expiration of the first period allowed for the completion of the annexation and the re-zoning before executing an extension of the same in February of 1986. Also, from the trial court's finding above, Sellers never conducted themselves as if time was to be of the essence. They appeared to be disinterested in the progress of the annexation and re-zoning efforts. It cannot be said that the conduct of *both* Ivy Knoll and the Sellers was such that the trial court's finding that time was not of the essence in the completion of the conditions precedent to the contract was clearly erroneous.

*II. Whether the trial court erred in finding notice of Buyer's waiver of the zoning condition given to attorney, Doug Floyd, was notice to the Sellers of the zoning condition waiver?*

■ Sellers attack a different portion of the same conclusion of law, number 5 reproduced above, they attacked in Issue I as the basis of the present issue. We held

under Issue I, above, that the trial court's finding time was not of the essence of the Purchase Agreement or the Amendment thereof was not clearly erroneous. We affirmed the trial court's finding Males's receipt of Ivy Knoll's waiver of the annexation and re-zoning condition notice on July 25, 1986 was timely in and of itself.

Therefore, the first part of the trial court's conclusion regarding notice given to attorney, Doug Floyd, is of no moment. The conclusion is mere surplusage and contributes nothing to the court's decision. Even if we were persuaded certain findings were clearly erroneous (we are not, in the present case, so persuaded), we need not reverse if the remaining valid findings and conclusions support the judgment. *Jackson v. Farmer's State Bank* (1985), Ind. App., 481 N.E.2d 395 (*trans. denied*). We find no error.

*III. Whether the trial court erred in finding the condition precedent of acquiring R-7 zoning was for the sole benefit of—and therefore could be unilaterally waived by—the buyers?*

■ The trial court made the following conclusion of law:

> 3. The conditions in the Purchase Agreement regarding annexation and re-zoning were for the sole benefit of Ivy Knoll, and Ivy Knoll had the unilateral right to elect to waive such conditions and proceed to closing without satisfaction of such conditions.

Sellers have contended the industrial and commercial uses, as proposed under the PD plan, would be detrimental to them and their community. They argue, therefore, the R-7 zoning condition precedent was not solely for Ivy Knoll's benefit, but was also for the Seller's benefit as the owners of the property adjoining the proposed development and could not be unilaterally waived by Ivy Knoll.

The benefit of the zoning condition to Ivy Knoll is obvious; Ivy Knoll wishes to build apartments on the property which would require its re-zoning. The purchase price should have reflected this use of the property.

Concerning the Sellers' interest in the R-7 zoning condition, it was entirely undisputed the development of the property would impact the value of the Sellers' remaining land. Mary Males, one of the Sellers, testified her mother said "that she did not want commercial or industrial development on the land, that we had agreed to R-7 and that's what she wanted." However, Sellers did not present objective evidence that PD zoning rather than R-7 zoning would impair the value of their remaining land nor did they present any evidence they had, before executing the Purchase Agreement, explored the economic impact the various different zoning changes would have on their adjoining property.

In any event, under our well-settled standard of review, set out in Issue I above, we are not permitted to substitute our judgment for that of the trial court's but must affirm if sufficient evidence supports the trial court's decision. The trial court in the case at bar was under no obligation to believe the Sellers' testimony—objective, subjective, or otherwise. *Symon v. Burger* (1988), Ind.App., 528 N.E.2d 850. The trial court found the Sellers "decided they would not close the transaction, a decision that no doubt derived at least in part by the fact that Manship had decided by February, 1986 that the Defendants had agreed to an inadequate purchase price for the Real Estate." Finding of Fact 26. This finding was derived from Manship's deposition which was admitted into evidence. Because the trial court could have disbelieved the Seller's argument concerning their stake in the zoning condition precedent and instead believed they wanted out of the agreement because they had made a bad bargain, we can find no error.

*IV. Whether the trial court erred in finding Sellers had waived any benefit of the zoning condition precedent by failing to make a reasonable or good faith effort to cause the zoning conditions to be satisfied?*

■ Sellers complain about the following conclusion of law made by the trial court:

4. Even if the conditions of annexation and re-zoning could be said to be conditions which were for the benefit of both the Defendants and Ivy Knoll, the Defendants cannot rely on the failure of such conditions to excuse their performance, because the Defendants failed to make a reasonable or good faith effort to cause such conditions to be satisfied.

Our eyes are drawn to the first two words of the conclusion—"even if." These words signal surplusage. Because we affirmed the trial court's finding the zoning condition was for the sole benefit of Ivy Knoll and therefore Ivy Knoll could waive the condition unilaterally, Issue III above, this conclusion is superfluous and may not be the basis for error for the reasons set out under Issue II above.

### V. Whether specific performance was the appropriate remedy under the circumstances?

Sellers first argue the court erred in ordering specific performance of the Purchase Agreement because the terms were too indefinite to support an order of specific performance citing *Cline v. Strong* (1912), 52 Ind.App. 286, 100 N.E. 569. The parties had used a form Commercial–Industrial Real Estate Purchase Agreement prepared by the Metropolitan Indianapolis Board of Realtors. The Agreement provided the parties would use the Indianapolis Bar Association "Land Contract" form. Sellers argue this form lacks three essential terms, manner of payment, use, and default and acceleration. We note at the outset that the present question is whether the Purchase Agreement itself is specifically enforceable and not necessarily the Land Contract that is incorporated by reference.

In *Cline, supra,* specific performance of a contract to sell real estate was denied because the terms of the agreement were too indefinite. The "contract" was a letter from a real estate agent to the plaintiff [buyer] stating that he had from the owner of the real estate in question an agreement to accept a certain sum for the property if taken on or before a certain date. The agreement was uncertain as to the time of payment, and the assumption of liens. The court held the agreement which purported to hold the option open for a time was indistinguishable from an option and did not constitute a contract enforceable in equity.

The Purchase Agreement in the case at bar is quite detailed and specific. It was bargained for; there were three counteroffers. It is a much different instrument than the letter in *Cline.* A contract for the sale of property need only be reasonably definite and binding as to its material terms to enforce by specific performance. When construing a contract, we will not find a lack of mutuality or uncertainty where a reasonable and logical interpretation will render the contract valid and enforceable. *Kokomo Veterans, Inc., supra.* We cannot say that either the "Purchase Agreement" form prepared by the Metropolitan Indianapolis Board of Realtors or the "Land Contract" form prepared by the Indianapolis Bar Association are so uncertain that a reasonable or a logical interpretation is impossible. They are not too indefinite to be enforced.

Sellers also assert an additional uncertainty exists which involves the payment of realtor's fees. While the third counteroffer of the Purchase Agreement provides for the payment of a five percent real estate commission, neither party has accepted the responsibility for the payment of this commission. Sellers assert that because they did not enter into a listing agreement with the realtors, as required by Ind.Code 32-2-2-1, they are not responsible for the payment of any real estate commission.[1]

We note that at the heading of the Purchase Agreement the names of James E. Murphy—Thomas P. Murphy and James Deering Company—Jim Deering are typed

---

1. The trial court granted the James Deering Real Estate Co., Inc.'s motion to intervene in this action during the pendancy of this appeal—presumably for us to decide this commission question. We granted the Sellers' motion to expunge the order granting intervention because the trial court lacked jurisdiction to make such an order while this appeal is pending.

in presumably as the representatives of the buyer and seller respectively. Immediately below that is the following language:

The undersigned, hereinafter called purchaser, having inspected the premises and relying entirely for its condition upon his own examination, hereby agrees to purchase from the owner through you as his Realtor the real estate known or described as: [the legal description]

Near the end of the Purchase Agreement is the following language:

The said earnest money deposit aforementioned shall be returned in full to purchaser promptly in event this purchase agreement is not accepted. In the event this purchase agreement is accepted, and purchaser shall, without legal cause, fail or refuse to complete the purchase of said real estate in accordance with the terms and conditions hereof, seller may pursue all legal or equitable remedies available to seller under the law, and said earnest money deposit shall be retained by the broker under his listing contract with said seller and shall be applied to the broker's and seller's damages.

Purchaser shall have the right to specific performance in the event of acceptance of this purchase agreement.

It is clear to us that the Jim Deering of the James Deering Company was the Seller's broker. The trial court determined this as a finding of fact. Finding of Fact 5. Presumably had the Sellers signed a listing agreement they would be responsible for the broker's commission out of the sale proceeds. That the broker failed to obtain the Seller's signature on a listing agreement and may therefore have a problem in collecting his fee is of no moment in the analysis of the enforceability of this Purchase Agreement. The presence or absence of a valid listing agreement is an entirely collateral matter.

 Sellers next attack the judgment of specific performance arguing that because Ivy Knoll had the unilateral right to waive the zoning condition the agreement lacked mutuality as required for the specific performance of an agreement to

sell land. *Cline, supra.* A condition precedent does not destroy mutuality since, once a condition is fulfilled or waived, mutuality of obligation exists. *Kokomo Veterans, Inc., supra.*

Finding no error, we affirm.

CONOVER, P.J., and BUCHANAN, J., concur.