PRAIRIE HEIGHTS EDUCATION, Ann Lebrecht, and Gloria Brown, in their capacity as Co–Presidents of the Prairie Heights Education Association, Kate Jackson, East Noble Education Association, and DeKalb Education Association, Appellants–Plaintiffs,

v.

BOARD OF SCHOOL TRUSTEES OF PRAIRIE HEIGHTS COMMUNITY SCHOOL CORPORATION, Board of School Trustees of East Noble School Corporation, and Board of School Trustees of DeKalb County Central United School District, Appellees–Defendants.

No. 44A03–9011–CV–504.

Court of Appeals of Indiana, Third District.

Jan. 27, 1992.

Richard J. Darko, Mary Jane Lapointe, Lowe Gray Steele & Hoffman, Indianapolis, for appellants-plaintiffs.

Charles R. Rubright, Bose McKinney & Evans, Indianapolis, for appellees-defendants.

GARRARD, Judge.

Plaintiffs, special education teachers with the Northeast Indiana special education Cooperative, signed individual teaching contracts with DeKalb County Eastern Community School District (DeKalb Eastern). The contracts were dated November 13, 1984 and covered the term of one school year that began on August 28, 1984 and ended on May 31, 1985. The terms of the contracts set out that the school year consisted of 180 days and also the amount of dollars to be paid "per year for the period of the contract."

The Northeast Indiana special education Cooperative (Cooperative) consists of 12 school districts and/or corporations that have by mutual agreement joined together to address the special education needs of school children within their boundaries. The participating member schools had entered into a contract known as the Joint Services, Leasing, Construction and Supply Fund Agreement in special education (the Agreement). These Agreements were entered into on an annual basis. One such Agreement covered the period of July 1, 1984 to June 30, 1985. One member school acted as the administering corporation. During the 1984–1985 year DeKalb Eastern was the administering corporation (LEA). Special education teachers employed through the Cooperative entered into individual teacher contracts with the LEA. The plaintiff teachers entered into their teaching contracts with DeKalb Eastern in its capacity as Cooperative LEA. The Agreement provided for the categorization of the special education teachers according to how their working assignments were apportioned between corporations. Under this scheme the special education teachers were assigned membership in a bargaining unit according to the category's terms. Once categorized the special education teacher "shall be entitled to the same master agreement rights and benefits as if employed by the member school corporation." Record at 362, Exhibit "F". Additionally, in the same section of the Agreement, under certain circumstances the special education teacher had an option to be retained "to the salary schedule and insurance package of the school corporation where he/she was assigned the previous year." *Id.* These circumstances included the special education teacher having to change categories, or school corporation assignment, or a change in the LEA. The Agreement also addressed grievance procedures for special education teachers in the various categories. Plaintiff teachers, under this provision were to "file grievances through the procedures as outline[d] in the Ma[s]ter Contract of their local school corporation." *Id.*

For the school year 1984–1985 plaintiff special education teachers were assigned wholly within the Prairie Heights Community School Corporation (Prairie Heights). They, in exercising the option, elected to be retained at the salary schedule of the school corporation where they had been assigned the previous year. Their previous assignment was to Lakeland Community School Corporation (Lakeland). Their

choice is explained by the difference in salaries between the school corporations.[1]

The dollar amounts provided for in the special education teacher's individual teaching contracts with the LEA, DeKalb Eastern, is the product of proration. The proration of the salary amounts was done by the executive director of the Cooperative. This affected the special education teachers because the salary schedule at Lakeland had a different number of work days than the salary schedule at Prairie Heights. Lakeland in 1984–1985 had a teacher work year of 183 teacher contract days and Prairie Heights, that same year, had 180 teacher contract days. The individual salaries were calculated by dividing the Lakeland salary schedule by 183 and multiplying that per diem rate by the number of contract days in the Prairie Heights system.[2]

The affected special education teachers, assigned to work within Prairie Heights, sought to address this matter by instituting a grievance. In compliance with the agreement of the Cooperative, they proceeded under the procedure provided for in the Prairie Heights Master Contract.[3] Their grievance was granted by the school principals at Prairie Heights at an interim level. A grievance report form dated January 24, 1985 was signed by these school principals. The "[d]isposition by [p]rincipal" was "[p]ay withheld should be restored without interest or other relief." Record at 6.

That interim disposition was later rescinded by the superintendent of schools.

The special education teachers and the Prairie Heights Education Association (PHEA) subsequently filed a two count complaint on January 11, 1988.[4] They alleged that the grievance disposition was completed in regard to plaintiffs Jackson, Lees and Rasp and that the interim disposition was binding upon the parties. The complaint requested that the court confirm the disposition and direct the defendants to comply with the disposition under the Uniform Arbitration Act.[5]

The defendants made timely answer and counter claimed seeking declaratory judgment.[6] They alleged that the compensation of teacher plaintiffs (Jackson, Lees, and Rasp) did not violate the collective bargaining agreement in effect at the time.

On September 7, 1989 the parties, in a jurisdictional statement, agreed to amend their complaints to include additional parties and to narrow the issues.[7] The issues for the court to consider were:

a. Whether the decision on the grievance involving Prairie Heights School Corporation was valid and binding on the parties.

b. Whether the proration of pay during the school year for those individual teachers employed under the contract by the DeKalb County Eastern Comm.

1. For example: the Lakeland teacher salary schedule contained in that corporation's Master Contract for 1984–1985 provided that a teacher with nine (9) years' experience and a Masters degree (i.e., plaintiff Jackson) had a base salary of $19,441 and the Prairie Heights Community School Corporation's Master Contract provided that a teacher with the same years' experience and degree had a base salary of $17,375.

2. For example, in the case of plaintiff Jackson, her base salary at Lakeland was $19,441. This was divided by 183, the number of teacher contract days in Lakeland, to arrive at a per diem rate of $106.23. This was then multiplied by 180, the number of teacher contract days at Prairie Heights where she was assigned to work, to arrive at a salary of $19,121.40. The individual contract that Jackson signed actually provided for a salary of $19,122.30.

3. The grievance procedure provided for a five step process with the final step to be taken

before the Board of School Trustees of the Prairie Heights Community School Corporation. Record at 359, Exhibit "C".

4. In the interim a cause of action was pursued on the part of the plaintiffs' representatives to seek arbitration on this issue. *See DeKalb Cty. East. Com. S.D. v. Ed. Ass'n.* (1987), Ind.App., 513 N.E.2d 189.

5. Indiana Code 34–4–2–1, *et seq.*

6. *See* IC 34–4–10–1 *et seq.*

7. The plaintiffs and added plaintiffs agreed to withdraw all grievance and respective demands for arbitration as consideration for the entering into the agreement. East Noble Education Association and DeKalb Education Association were added as plaintiffs and Board of Trustees of East Noble School Corporation and Board of Trustees of DeKalb County Central United School District were added as defendants.

School Dist., as the administering school corporation (LEA) for the Northeast Indiana Special Education Cooperative, based upon the number of work days in the collective bargaining agreement for the school district in which each teacher is housed, is violative of any rights of those teachers and/or of the Plaintiffs and Added Plaintiffs.

On June 18, 1990 the matter was tried before the court. The parties were granted leave to submit proposed findings of fact and conclusions of law and post-trial briefs. On August 7, 1990 the court entered findings of fact and conclusions of law, finding for defendants and against plaintiffs.

## Discussion

### I. Appellate Review

In reviewing a trial court's judgment that is based upon findings of fact and conclusions of law we will not reverse unless the findings and conclusions drawn from them are clearly erroneous. A judgment is clearly erroneous when it is unsupported by the findings and conclusions. Findings of fact are clearly erroneous when the record fails to disclose any facts in evidence or reasonable inferences from the evidence to support the findings. *Donavan v. Ivy Knoll Apts. Partnership* (1989), Ind.App., 537 N.E.2d 47, 50. We will not reweigh the evidence and will affirm the trial court unless the evidence when viewed in a light most favorable to

the judgment points uncontrovertibly to an opposite conclusion. *Id.* at 50–51.

### II. Interim Level Grievance Disposition

The appellants advance two arguments in support of their position that the principals' disposition of the plaintiff teachers' grievance at the interim level is binding on the Prairie Heights School Corporation. The first argument presented is that the disposition by the principals was binding as a contract of settlement. The appellants take exception with the trial court's finding that the school principals did not have authority to settle that grievance and bind the appellees to their disposition. They would have us apply agency principles and find that the building principals had actual or apparent authority to act on behalf of the Prairie Heights Community School Corporation. The appellants support this argument by citing to 3 Am.Jur.2d, *Agency* § 81 [8] and also to the case of *Hope Lutheran Church v. Chellew* [9] (1984), Ind.App., 460 N.E.2d 1244. We agree with the quoted portions excised from these sources, but not with the contention that they stand for the proposition that school principals are agents of school corporation boards for the purpose of adjusting teachers' pay.

Actual agency has been previously defined and three elements have been discerned. These are: (1) manifestation of consent by the principal; (2) acquiescence by the agent; and (3) control exerted by the principal. *Chellew, supra,* 460 N.E.2d at 1247. Appellants presented only the Prairie Heights Master Contract as stand-

---

**8.** "Stated in terms of estoppel, the rule is that where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has authority to perform a particular act and deals with the agent upon that assumption, the principal is estopped as against such third person from denying the agent's authority; he will not be permitted to prove that the agent's authority was, in fact, less extensive than that with which he was apparently clothed. This rule has been based upon the principle that where one of two innocent parties must suffer from the wrongful act of another, the loss should fall upon the one who, by his conduct, created the circumstances

which enabled the third party to perpetuate the wrong and cause the loss." 3 Am.Jur.2d, *Agency* § 81.

**9.** "Like an actual agency relationship, an apparent agency is also initiated by a manifestation of the principal. However, the required manifestation is one made by the principal to a third party who in turn is instilled with a reasonable belief that another individual is an agent of the principal. The essential element being there must be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party." *Hope Lutheran Church v. Chellew* (1984), Ind. App., 460 N.E.2d 1244, 1248 (citations omitted).

ing for the establishment of an actual agency relationship between the Prairie Heights school principals and Prairie Heights Community School Corporation. Appellees had offered testimony directly on the point that the school principals had no authority to establish salaries or pay for teachers.

Additionally, the School Corporation General Powers Act provides that in carrying out the school purposes of each school corporation, its

> "... governing body ... shall have the following specific powers: ... (7) to employ, contract for and discharge superintendents, supervisors, principals, teachers ... *to fix and pay the salaries* and compensation of such persons ... and to adopt schedules of salaries...." (emphasis added)

IC 20–5–2–2. This statute establishes that the governing bodies of school districts have the sole responsibility and authority to fix and pay the salaries and compensation of teachers. No actual agency has been shown in the case at bar.

■ Critical to any application of agency law, via apparent authority so that the Board of School Trustees of the Prairie Heights Community School Corporation was bound by the acts of a school principal as an agent, is a showing that the teacher plaintiffs, as third parties, reasonably believed that the agent was acting with authority. *See Grosam v. Laborers' Intern. U. of North Am.* (1986), Ind.App., 489 N.E.2d 656, 658. Where a third party knows, or should know, the agent is exceeding his authority, the principal will not be bound. *Id. citing Herald Telephone v. Fatouros* (1982), Ind.App., 431 N.E.2d 171; *Burger Man, Inc. v. Jordan Paper Products Inc.* (1976), 170 Ind.App. 295, 352 N.E.2d 821; *Storm v. Marsischke* (1973), 159 Ind.App. 136, 304 N.E.2d 840 (all standing for the requirement of reasonable belief on the part of third parties). This requirement is implicit in appellants' excerpt from 3 Am.Jur.2d, *Agency* § 81 and in the quote from *Chellew.*

The plaintiffs point to no evidence in the record that would have allowed the trial court to find "some form of communication, direct or indirect, by the principal, which instill[ed] a reasonable belief in the minds of the [plaintiffs]," *Chellew, supra,* 460 N.E.2d 1244, 1248, that school principals at the Prairie Heights Community School Corporation, as agents, could alter the terms of their individual teachers' contract entered into with DeKalb County Eastern Community School District. Teachers of ordinary prudence, conversant with teaching usages and the nature of teaching practices, cannot justifiably assume that a school principal has authority to alter the terms concerning the amount of pay of their teaching contracts. *See* 3 Am.Jur.2d, *Agency* § 81, n. 4, *supra.* No apparent agency was shown under the circumstances of the case at bar.

■ The appellants argue that this court in spite of the above, should confirm the disposition of the grievance at the interim level under the Uniform Arbitration Act (UAA).[10] Appellants acknowledge that as part of the jurisdictional statement offered to the trial court, demands for arbitration were withdrawn. Confirmation of an award under the UAA requires an award "in writing and signed by the arbitrators concurring therein." IC 34–4–2–9(a). In other words, there must have been some arbitration. Appellants essentially invite us to sit as arbitrators of this issue to fill the void that exists because no arbitration was conducted in this case. This we decline to do.

Notwithstanding the above, the school boards might be bound in some situations by the "Principal Disposition[s]" of teacher grievances that occur at the interim level. This conclusion is based upon reading the Joint Services, Leasing, Construction and Supply Fund Agreement in Special Education (Agreement), the Master Contract between the Board of School Trustees of the Prairie Heights Community School Corporation and the Prairie Heights Education Association (MC–PHEA), and the individual teaching contracts (Contracts) of the teach-

---

**10.** IC 34–4–2–1 *et seq.*

er plaintiffs. We address today only the issue of whether the Prairie Heights school principals may bind the DeKalb Eastern School Board on matters of special education teacher pay. The answer is that they may not.

### III. Proration of Salary

Plaintiffs take exception with the trial court's ruling that the proration based upon the number of worked days did not violate the special education teachers' rights.

■■ They argue, as third party beneficiaries of the Agreement which was bargained for, that any subsequent unilateral amendments constitute impermissible modifications. Their argument is not entirely clear. Plaintiffs' stance on this issue is flawed by the fact that the Agreement was found not to have been the result of any bargaining between the exclusive representatives of the special education teachers and the Cooperative. Findings of fact numbered 22 through 25. Plaintiffs argue that the Agreement was negotiated according to and in compliance with the CEEBA and therefore any changes made to the Agreement subsequent to its creation are null and void under the doctrine of De facto Certification. Their argument is based upon their reading of the case of *DeKalb Cty. East. Com. S.C. v. Ed. Ass'n.* (1987), Ind.App., 513 N.E.2d 189. That case came to this court as an appeal of the trial court's denial of the school district's petition to stay arbitration. The plaintiffs rely on a footnote from that case which states:

> The record indicates that the Indiana State Teacher's Association representing several local associations, negotiated with the Special Ed Co-op for the provisions in the Joint Agreement determining the appropriate bargaining units for the co-op teachers. Thus an agreement was reached by the appropriate parties pursuant to IC 20–7.5–1–10(a)(1).

513 N.E.2d at 193, n. 2. With that footnote we must now disagree. Findings of fact numbered 22 through 25 are supported by the record in the case at bar. Additionally, plaintiffs' witness' testimony upon cross-examination establishes that the Indiana State Teacher's Association's involvement did not have the character of bargaining by the exclusive representative of Co-op Special Education teachers, but was more in the nature of consultation.[11]

Plaintiffs argue that they are third party beneficiaries of the Cooperative Agreement. It is established that those not party to a contract may directly enforce that contract in Indiana. *Morgensen v. Martz* (1982), Ind.App., 441 N.E.2d 34, 35. To prevail upon a claim as a third party beneficiary the claimant must demonstrate:

(1) A clear intent by the actual parties to the contract to benefit the third party;

(2) A duty imposed on one of the contracting parties in favor of the third party; and

(3) Performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract.

*Barth Elec. Co. v. Traylor Bros., Inc.* (1990), Ind.App., 553 N.E.2d 504, 506, *citing Morgensen, supra.*

■ The direct benefit that the plaintiffs seek is to draw pay for three days not actually worked. The direct benefit intended by the member school corporations in their Cooperative Agreement has been conferred upon the plaintiffs. The plaintiff special education teachers were retained at the salary schedule of Lakeland. The per diem rate was calculated and they were paid for the 180 days they actually worked at Prairie Heights. They received no less and no more than if they had worked 180 days at Lakeland. Their request for pay for days not worked is unsupported in law or reason. Without a breach in the terms of the underlying contract, any argument based in third party beneficiary status is misplaced.

---

11. *See* IC 20–7.5–1–10 for the statutory requirements for bargaining unit determination and the selection of an exclusive bargaining representative. The footnote in *DeKalb* is, of course, not a part of the decision.

Plaintiffs' invitation that we adopt and apply the doctrine of De facto Certification must be declined under the facts of this case. This court duly notes the declaration of the Indiana General Assembly that "[t]he relationship between school corporation employers and certificated school employees is not comparable to the relation between private employers and employees...." IC 20–7.5–1–1(d).

### IV. Measure of Proration

Plaintiffs lastly contend that if proration was proper, then instead of using 183 days to calculate the per diem rate under the Lakeland salary schedule, the proper figure is 181.5. Our response recalls our standard of review in this case as discussed at the beginning of this opinion. Here, they essentially request that we reweigh the evidence. That we cannot do.

In consideration of the above discussion, the judgment of the trial court is affirmed.

ROBERTSON, J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent to Part II of the Majority Opinion. Part II involves two classes of teachers—those who filed grievances with their principals and those who did not. As to the remainder of the Majority Opinion, I concur in result with Parts I, III, and IV.

### I.

#### Teachers Who Filed Grievances

The resolution of this issue turns upon whether the school principals were actual or apparent agents of the Board of School Trustees of the Prairie Heights Community School Corporation. The majority resolves this question in the negative; I must respectfully disagree.

The term "actual agency" describes a relationship which has the following three attributes: 1) manifestation of consent by the principal; 2) acquiescence by the agent; and 3) control exerted by the principal. *Hope Lutheran Church v. Chellew* (1984), Ind.App., 460 N.E.2d 1244, 1247, *transfer denied.* An agent can bind his principal within the scope of his actual authority. An individual can also have "apparent authority" to bind a principal if a third person reasonably believes he has that authority because of some manifestation made to the third party from the principal which instills the third person with a reasonable belief that the individual is acting for the principal. *Pepkowski v. Life of Indiana Ins. Co.* (1989), Ind., 535 N.E.2d 1164, 1166–1167. It is essential that there be some form of communication by the principal, direct or indirect, which instills a reasonable belief in the mind of the third party. *Id.* at 1167.

The majority concedes the accuracy of the following passage from Am.Jur. cited by the plaintiff teachers and quoted at footnote 8 of the majority opinion:

> Stated in terms of estoppel, the rule is that where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has authority to perform a particular act and deals with the agent upon that assumption, the principal is estopped as against such third person from denying the agent's authority; he will not be permitted to prove that the agent's authority was, in fact, less extensive than that with which he was apparently clothed.

3 Am.Jur.2d, *Agency* § 81.

Here, the master contract between the Board of School Trustees of the Prairie Heights Community School Corporation and the Prairie Heights Education Association (Master Contract), incorporated by reference in the Special Education Agreement, conferred authority upon the school principals to act as grievance officers in their schools. Clearly, this is a manifestation made to the teachers, who possessed copies of the Master Contract and instituted their grievance procedures under it pursuant to the directive of the Special Education Agreement.

The majority holds, however, that in this case the principals (here, interestingly, the

agents for purposes of agency law) did not have apparent authority to bind the School Board (here the principal for purposes of agency law) because the principals were not authorized to fix and pay salaries by statute. The teachers are charged with knowledge of this statutory provision. Therefore, the majority concludes that "[t]eachers of ordinary prudence, conversant with teaching usages and the nature of teaching practices, cannot justifiably assume that a school principal has authority to alter the terms concerning the amount of pay of their teaching contracts." At 293.

The Special Education Agreement provides that the teachers in question "shall file grievances through the procedures as outlines [sic] in the Mater [sic] Contract of their local school corporation." Record, p. 361. The Master Contract defines a "grievance" as "a claim by one or more teachers that a clause, provision or article of this Agreement has been violated or misapplied in such a way as to personally and adversely affect the teacher or group of teachers." Record, p. 358. Logically, a grievance for the special education teachers would include claims of violation of the Special Education Agreement; if it did not, it would render the grievance clause in the Special Education Agreement superfluous. We construe the language in a contract so as not to render any words, phrases or terms ineffective or meaningless. *Bicknell Minerals, Inc. v. Tilly* (1991), Ind.App., 570 N.E.2d 1307, 1316, *reh'g denied.* Thus, the School Board through the master contract has conferred authority upon the principal as a grievance officer to interpret the contracts. The principals here were performing that duty when they awarded the balance of the teachers' salaries to them.

The principals were not "fixing" or "paying" the salaries of the teachers within the meaning of IC 20-5-2-2. The salaries had already been fixed by the School Board

when it entered into the Special Education Agreement with the other school corporations permitting the teachers to retain the salary schedule and insurance package of the previous year if they wished. It is true that the Agreement does not contain the specific salary figures,[1] but it incorporates by reference the master contracts of the various school corporations, which do contain the applicable figures. The principals' task, which they performed correctly, was simply to examine the Special Education Agreement in conjunction with the Master Contract to ascertain the proper salary figure. Thus at the very least the principals had apparent authority to redress the teachers' grievances, and the School Board is estopped from denying their authority to bind it.

## II.

### *Teachers Who Did Not File Grievances*

In my view, the teachers affected by the 1984–1985 Special Education Agreement who did not file grievances are also entitled to relief. These teachers are clearly third-party beneficiaries of the Agreement. As such, they may directly enforce the contract. *Mogensen v. Martz* (1982), Ind.App., 441 N.E.2d 34, 35.

The Special Education Contract provides:

[I]f a teacher is changed from one school corporation to another without changing categories, the teacher shall be retained, at the teacher's option, to the *salary schedule* and insurance package of the school corporation where he/she was assigned the previous year.

Record, p. 361. No mention was made in the 1984–1985 Special Education Agreement of pro-ration of salaries for Category A and B teachers.[2] Nor do the salary schedules mention pro-ration of salaries. I would hold that the clear and unambiguous intent of the Agreement was to allow the

---

1. Indeed, an enumeration of salary figures would be well nigh impossible. In addition to the traditional variables (education and seniority), the possible salary of the individual special education teacher depends upon which of the many school corporations at which the teacher

was last employed and which school at which he or she is currently employed.

2. In subsequent years, a provision for pro-ration of salaries was added to the Special Education Agreement, which was renewed each year.

teacher to recover the full salary figure set out in the salary schedule in the applicable master contract.

In sum, I would reverse that portion of the trial court's judgment dealing with the disputed salary figures for the 1984–1985 school year. I would affirm in all other respects.