The TOWN & COUNTRY HOMECENTER OF CRAWFORDSVILLE, INDIANA, INC., Appellant–Plaintiff,

v.

Ronald W. WOODS, National City Bank of Indiana, Appellees–Defendants.

No. 54A01–9903–CV–89.

Court of Appeals of Indiana.

April 4, 2000.

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, Indiana, Attorney for Appellant.

Mark R. Galliher, Hopper, Galliher & Tucker, P.C., Indianapolis, Indiana, Attorney for Appellant.

## OPINION

BAKER, Judge

Appellant-plaintiff Town & Country Homecenter of Crawfordsville, Indiana, Inc. (T&C) appeals the trial court's judgment in favor of appellee-defendant, National City Bank (NCB). Specifically, T&C argues that, as vendor of materials to builder Woods, it was a third-party beneficiary of the agreement between mortgagee NCB and mortgagor Lynn Fellows, who purchased a house built by Woods. Furthermore, T&C argues that NCB's action in disbursing funds to Woods when T&C was still owed $32,866.12 constituted constructive fraud. Finally, T&C maintains that NCB committed the criminal offense of deception when it required that Woods sign an affidavit stating that there were no unpaid claims for materials furnished.

## FACTS

The facts most favorable to the judgment reveal that in June 1992, Lynn Fellows contracted with Ronald Woods to build a house. Fellows paid Woods $10,000 as down payment and applied for a mortgage with NCB to cover the remaining balance, which was due at closing. Woods purchased materials for the house from T&C. On September 23, 1992, Fellows received a letter from T&C entitled "a routine letter" (the pre-lien notice) which stated that T&C could perfect a lien against his property if payment was not received for the materials. Record at 60–61, 92–93. Fellows brought the letter to the attention of Tom Gineris, the NCB representative handling his mortgage. Gineris responded that there was no problem, that similar situations arose "all the time" and that the letter would be addressed at closing. R. at 155.

The closing on Fellows' house occurred on October 13, 1992. Prior to the closing, T&C did not communicate with anyone at NCB regarding the bill owed by Woods. At the closing, Gineris questioned Woods about liens against the property. Woods acknowledged the existence of a mortgage held on the property by Tri–County Bank & Trust. Woods also confirmed that he had not completed payment to T&C but stated that he would pay T&C from the check he received at the closing. Gineris required that Woods sign a vendor's affidavit which stated that there were no liens on the property and that there were "no unpaid claims for labor done upon or materials furnished for the real estate in respect of which liens have been or may be filed." R. at 141–42. NCB then issued one check in the amount of $40,321.90 to Tri–County for Woods' construction loan and a second check to Woods in the amount of $59,229.17. Before doing so, Gineris asked Fellows if he was "comfortable" with disbursing the funds to Woods, based on Woods' statement that he would pay T&C from the proceeds. R. at 123. Fellows said, "That would be fine." R. at 123.

On January 11, 1993, T&C filed a mechanics lien against Fellows' residence with the Montgomery County Recorder, asserting it was owed $32,866.12. On January 7, 1994, T&C filed a complaint seeking to foreclose the lien, naming Woods, Fellows, NCB and the Montgomery County Treasurer as defendants. However, Fellows and the Montgomery County Treasurer were dismissed from the action.[1]

---

1. We note that on November 14, 1994, the trial court entered a default judgment in favor

T&C's mechanics lien was ultimately released because the notice to Fellows did not comply with statutory limits.

Evidence was submitted by stipulation and deposition testimony presented by T&C and NCB. The trial court then made its decision without hearing or jury, as agreed by the parties. It entered its order and judgment in favor of NCB and against T&C on December 17, 1998. T&C filed a motion to correct errors, which the trial court denied. T&C now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■■■ By agreement of the parties in this case, the trial court weighed evidence from exhibits and deposition transcripts and arrived at findings of fact and conclusions of law.[2] Our standard of review for the trial court's findings of fact requires that we not reweigh the evidence, but rather affirm the trial court's decision unless the trial court's findings are clearly erroneous. *Indiana Farmers Mut. Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1380–81 (Ind.Ct. App.1997), *trans. denied.* The trial court's findings of fact may be found clearly erroneous only if the record lacks any evidence or reasonable inferences from the evidence to support such findings. *Id.*

■■■ The trial court also decided questions of law: whether an agreement existed and whether T&C was a third-party beneficiary to such an agreement. We review the trial court's conclusions of law *de novo*. *Brown v. State,* 677 N.E.2d 517, 518 (Ind.1997).

### II. Third–Party Beneficiary Status

T&C first claims that it is the third-party beneficiary of the agreement between mortgagee NCB and mortgagor Fellows which permitted Fellows to take out a mortgage for his home. Specifically,

of T&C against Woods for the sum of $45,-603.83.

T&C argues that NCB had a fiduciary duty to Fellows and T&C to exercise reasonable care that T&C be paid and that it breached that duty in disbursing funds to Woods knowing that T&C had not been paid.

We note that, in order to prevail upon a claim that one is a third-party beneficiary to a contract, a plaintiff must prove:

(1) A clear intent by the actual parties to the contract to benefit the third party;

(2) A duty imposed on one of the contracting parties in favor of the third party; and

(3) Performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract.

*Prairie Heights Educ. v. Bd. of Sch. Trustees of Prairie Heights Community Sch.,* 585 N.E.2d 289, 294 (Ind.Ct.App. 1992).

■■■ In this case, NCB's representative Gineris stated to Fellows that T&C's pre-lien notice would be "address[ed]" at the closing. R. at 155. We do not see in this statement a promise that T&C would be paid. Rather, at most, any promise amounted to a commitment to protect Fellows' interest by addressing the notice at the closing, where it was indeed addressed. R. at 123–24, 146. After Woods informed Gineris that he would pay T&C with the check he was to receive from NCB, Gineris required Woods to sign a vendor's affidavit which stated that there were "no unpaid claims for ... materials furnished for the Real Estate in respect of which lien have been or may be filed." R. at 141–42. Fellows stated that NCB's payment to Woods, based on Woods' statement that he would pay T&C, was "fine." R. at 123. Thus, we do not see on NCB's part a commitment to ensure payment to T&C.

2. We wish to note that the trial court made extensive, clear and helpful findings of fact and conclusions of law.

■ Furthermore, even if a contract were established by Gineris' remark that the pre-lien notice would be addressed, the evidence presented does not demonstrate that NCB and Fellows had a "clear intent" to benefit T&C, as required under Indiana law. *See Prairie Heights*, 585 N.E.2d at 294.

T&C also contends that it was the intended beneficiary of the agreement between Gineris and Fellows. Specifically, it asserts that it is a "creditor beneficiary" under the Restatement of Contracts and therefore is entitled to bring suit based on the agreement of Gineris and Fellows. Appellant's brief at 19–20.

Section 302 of the Restatement (Second) of Contracts (1981) provides that:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either:

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts, § 302 (1981). Furthermore, the Comments to § 302 define a creditor beneficiary as "[t]he type of beneficiary covered by (1)(a)," that is the beneficiary of a promise to pay the promisee's debt.

■ In this case, T&C is not a creditor beneficiary because such a beneficiary is one who is a creditor of the promisee. Here, the promisee was Fellows, and T&C was not his creditor. Thus, the analysis which T&C asks us to perform does not apply.

■ We note that T&C did not avail itself in a timely fashion of its remedy: a mechanics lien on Fellows' property. T&C

finally filed its lien more than sixty days after the materials had been supplied and thus exceeded the statutory filing limit then in effect.[3] T&C then realized its next possible remedy, a judgment against Woods for the money it was owed. We cannot say that its failure to act in a timely manner on its own behalf creates a duty in other parties to have done more. We note further that the trial court correctly found that NCB had a duty as mortgagee to protect the interests of Fellows, the mortgagor, for three reasons: because of the express agreement that the pre-lien letter from T&C would be addressed at closing, because custom and practice so dictated, and because of the special relationship created by NCB's control of payment and its disbursement to a third party. However, Fellows was not harmed by NCB's breach of its duty to protect Fellows against a valid claim by T&C.

### III. Case Law

■ T&C further argues that NCB is liable to T&C under the decision in *Prudential Ins. Co. v. Executive Estates, Inc.*, 174 Ind.App. 674, 369 N.E.2d 1117 (1977). In that case, our supreme court held that a mortgage lender which controlled the disbursement of mortgage loan proceeds at closing had a duty to disburse loan proceeds so as to protect the interest of the mortgagor by securing releases from those having claims against the mortgagor under specific circumstances. *Id.* at 694, 369 N.E.2d at 1129. In this case, however, *Executive Estates* is inapplicable because it solely concerns the liability that a mortgage lender has to its borrower, not to third parties. *See id.* Simply put, we cannot find that a mortgage lender has a duty to oversee the repayment of all contractors and suppliers. Indeed, our supreme court held in *Executive Estates* that, generally, a lender has no obligation to protect even the interests of its borrower unless bound to do so by an agreement. *Id.* at 684, 369 N.E.2d at 1123. As the

---

3. IND.CODE § 32–8–3–3 (1992).

trial court noted, T&C provided no case law to support the conclusion that a mortgagee's duty to protect the interests of the mortgagor can extend to a materialman as a third-party beneficiary or by any other means. Supp. R. at 10. The trial court did not err when it found that NCB had no duty to T&C.

## IV. Constructive Fraud

T&C next makes an equitable claim for constructive fraud. Specifically, it argues that a bank has a duty of good faith and fair dealing, which NCB breached when it allowed Woods to sign an affidavit saying debts had been paid when they had not.

The elements of constructive fraud are:

(1) a duty existing by virtue of the relationship between the parties;

(2) a violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when the duty to speak exists;

(3) reliance thereon by the complaining party;

(4) injury to the complaining party as a proximate result of that reliance; and

(5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Wells v. Stone City Bank,* 691 N.E.2d 1246, 1250–51 (Ind.Ct.App.1998), *trans. denied.*

■ In this case, the evidence did not establish the elements of constructive fraud. First, T&C submitted no proof of a relationship between T&C and NCB. Because we have already found that T&C was not a third-party beneficiary, that status will not help to establish the required relationship here. Furthermore, there was no evidence that T&C was injured by reliance upon any misrepresentations made by NCB. Finally, NCB gained no advantage at T&C's expense. Thus, we find that the elements of constructive

fraud are not met and that the trial court correctly concluded so.

## V. Deception

T&C next argues that NCB committed Deception,[4] a Class A misdemeanor. Specifically, T&C contends that Woods knowingly made a false statement with intent to obtain property and that Gineris misapplied the funds paid by NCB by paying out money and accepting the false affidavit by Woods. T&C maintains that NCB was therefore complicit in Woods' act of deception.

I.C. § 35–43–5–3(a) provides that:

A person who:

(2) knowingly or intentionally makes a false or misleading written statement with intent to obtain property ... [or]

(3) misapplies entrusted property, .. or property of a credit institution in a manner that the person knows involves substantial risk of loss or detriment to either the owner of the property or to a person for whose benefit the property was entrusted ...

commits deception, a Class A misdemeanor.

■ In this instance, however, there is no evidence that NCB misapplied entrusted property. The disbursed funds were originally its own, rather than "entrusted" to them, and these funds were disbursed to Woods and Fellows with Fellows' permission. R. at 123. Furthermore, there was no evidence that NCB had any warning from T&C or any other source that there was any danger of Woods failing to pay T&C for materials. R. at 152–54. Thus, we cannot agree that NCB knowingly placed Fellows and T&C at "substantial risk of loss" in disbursing the funds as it did. Appellant's brief at 29. Rather, we agree with the trial court finding that NCB's payment of funds to Woods did not constitute criminal deception.

4. IND.CODE § 35–43–5–3.

## VI. Damages

■ Finally, T&C argues that it should receive compensatory damages plus interest for the amount owed by Woods and treble statutory damages as well as expenses and costs and fees because its loss was due to criminal deception. I.C. § 34–24–3–1. Alternatively, it argues that common law punitive damages may be assessed.

Because we do not find that criminal deception was committed, or that T&C could prevail upon any other issue it presented, we conclude, as did the trial court, that T&C is not entitled to damages.

## CONCLUSION

In conclusion, we find that, while NCB had a duty to protect Fellows, it had no duty to protect T&C, inasmuch as T&C was not a third-party beneficiary to its agreement with Fellows. Furthermore, we find that the elements of constructive fraud and of criminal deception are not met. As a result, the trial court properly entered judgment against T&C.

Judgment affirmed.

SULLIVAN, J., concurs with opinion.

STATON, Sr. J., dissents with opinion.

SULLIVAN, Judge, concurring

I concur because under the law, as it presently exists in both statutory and common law form, there is no cognizable basis for recovery by T&C against NCB. Yet it seems incongruous that under the facts of this case NCB should not be responsible for its conduct which led to clearly foreseeable harm to a known and totally innocent party, T&C.

The majority notes, and I would strongly emphasize, that NCB had a duty as mortgagee to protect the interests of Fellows, the mortgagor, and further, that NCB breached that duty. However, as the majority further observes, the breach of duty caused no harm to Fellows because T&C, by not timely filing, had lost its right to a mechanic's lien and because T&C dismissed its complaint against Fellows based upon personal liability for unjust enrichment.[5] T&C did not premise its suit against NCB upon any theory other than foreclosure of a mechanic's lien which was not timely filed.[6]

---

5. Personal liability on the part of an owner exists separate and apart from any mechanic's lien liability pursuant to I.C. 32–8–3–9. *John Wendt & Sons v. Edward C. Levy Co.* 685 N.E.2d 183 (Ind.Ct.App.1997) *trans. denied.* However, this liability may be limited to the extent of funds remaining on hand or under the control of the landowner/purchaser. *McCorry v. G. Cowser Constr., Inc.,* 636 N.E.2d 1273 (Ind.Ct.App.1994) *adopted on transfer,* 644 N.E.2d 550. In the case before us, until conclusion of the closing and disbursement of the funds to Woods, moneys remained on hand for satisfaction of T&C's claim. When Woods absconded with those funds without paying T&C, it could be argued that funds no longer remained under the control of Fellows and NCB and that therefore, Fellows and NCB would not have to pay T&C. However, language from *McCorry* suggests otherwise. In that case, money was still due the contractor under the terms of the original contract when the contractor breached the contract by failing to complete the project. The owner claimed that because of the breach, the unpaid amount was no longer

"due." However, apropos of the case before us the *McCorry* court said:

> "If a contractor's breach meant that no amount remained 'due' for purposes of the personal responsibility statute, the 'consequences of the contractor's absconding or going broke or otherwise defaulting' [citation omitted] would be that no subcontractor could ever recover under that section." 636 N.E.2d at 1279.

However, because, as noted, T&C dismissed its personal liability claim against Fellows, we need not resolve this issue.

6. In its brief, T&C argues that it was a third party beneficiary of an agreement between Fellows and NCB that the matter of T&C's claim as per its informational letter to Fellows would be addressed at closing. A reasonable inference from such "agreement" would be that no adverse effect would be visited upon Fellows by reason of T&C's claim. The fact that the matter was not resolved at the closing does not give rise to third party beneficiary liability on the part of the bank because Fellows did not sustain any

Nevertheless, I find the conduct of NCB reprehensible and indefensible. When advised of T&C's letter to Fellows concerning T&C's unpaid claims, NCB advised that the matter would be "address[ed] at closing". Record at 155. At closing, with knowledge that Woods had not yet paid T&C, NCB, based solely upon Woods' promise to pay T&C, not only encouraged or induced Woods to execute the false affidavit representing that there were no claims outstanding for which liens could be filed,[7] but also went ahead and disbursed all of the remaining funds to Woods.

Such conduct represents a total disregard for the interests of persons known to have an interest in the proceeds of the real estate closing and in addition flies in the face of well established custom and practice within the lending industry. This custom and practice would have dictated issuance of a check made payable both to Woods and to T&C, or retainage or escrow of the amount necessary to satisfy the claim, or obtaining a release from T&C prior to disbursement of the funds. NCB did none of these things. Rather, by disbursement of the funds to Woods, it placed the thief in the position to abscond and renege upon his promise to pay T&C from those funds. In our law, we have a well established equitable principle that where a detriment or harm must be sustained by one of two innocent parties, the party placing the thief or other culpable wrongdoer in the position to cause the harm, should suffer the burden of rectifying the wrong. *In re Marriage of Glendenning*, 684 N.E.2d 1175 (Ind.Ct.App.1997), *trans. denied*; *Brownsburg Lumber Co. v. Mann*, 537 N.E.2d 1386 (Ind.Ct.App.1989). There is even stronger reason to place that burden upon a negligent or culpable party, such as NCB, as opposed to making a totally innocent party, T&C, suffer the loss.

Perhaps relief from situations such as here presented may be found within our concept of tort liability. As earlier noted, NCB knew that T&C had a valid claim against Woods and that the claim had not been paid. Under the circumstances existent at the time of the closing, it could be said that NCB owed a duty of reasonable care with regard to disbursement of funds in light of that known claim. NCB's breach of its duty to Fellows may be said to give rise to tort liability for the negligent disbursement of funds with regard to persons who would be foreseeably injured by such negligence.

Be that as it may, it would seem appropriate to revisit the issue, whether in tort or contract to avert the inequities apparent in the present state of the law. In an analogous case, *McAdams v. Dorothy Edwards Realtors, Inc.*, 604 N.E.2d 607 (Ind. 1992), our Supreme Court held that a real estate agent, responsible for disbursing trust account funds following a real estate closing, was not liable to the purchaser for negligent disbursement resulting in failure to extinguish a lien because the real estate broker was the agent of the seller and therefore owed no duty to the purchaser.

In a scholarly analysis of the case, however, a commentator observed that the real estate agent was doing much more than acting as the seller's agent in that he was "the moving force in the real estate closing". Walter Krieger, *1993 Developments in Indiana Property Law*, 27 IND. L. REV. 1285 at 1302–03 (1994). Such is the case here and as noted it may no

adverse effect as evidenced by T&C's dismissal of its complaint against Fellows. T&C does not argue that it was a third party beneficiary of a separate contract between Woods as promisor and NCB and Fellows as promisees to pay T&C from the funds disbursed to him at closing. If such were the case, T&C might fall within the definition of a third party beneficiary as contemplated by *Prairie Heights Educ. v. Board of Sch. Trustees*, 585 N.E.2d 289 (Ind.Ct.App.1992), or a creditor beneficiary as contemplated by Section 302(1)(b) of the *Restatement (Second) of Contracts* (1981). Be that as it may, the issue is not before us.

7. As of the date of closing, T&C still had time within the sixty-day window of opportunity to file a lien.

longer be prudent for one of the parties to the transaction to allow an agent of the other party to preside over a closing and disburse the proceeds.

The court in *McAdams* planted the seeds for reviewing and revising the law as to the matter of liability in real estate closing situations. The court stated in the final paragraph of its decision:

"There is no question but that the [purchasers] were wronged. The real wrong was perpetrated by the [sellers], however, not by their agents.... [Purchasers] trusted [sellers] to keep their end of the bargain, but they signed a contract which left them exposed if the [sellers] absconded. If [the real estate agent handling the closing] had advised [purchasers] during the closing to step back and consult with counsel before signing such a contract, the resulting harm might have been avoided..... [H]owever, the law does not hold him financially accountable for failing to do so."

*McAdams, supra,* 604 N.E.2d at 612. Thus, while I concur in the decision to affirm the judgment of the trial court, I do so in the hope that our Supreme Court will reopen the matter and resolve it in a manner not unfair to any party to such financial and fiduciary transactions.

STATON, Sr. Judge, dissenting

I dissent. A duty was created at the mortgage closing when National City Bank obtained knowledge of the money owed Town and Country for building materials. Where the relationship of the parties creates a justifiable reliance upon one of them and the circumstances are completely controlled by the party relied upon, a duty to use reasonable care exists.[8] National City Bank as the mortgagee was experienced in making mortgage loans. Its closing agent, Tom Generis, had been advised by Fellows, the mortgagor, of his concerns that

Town and Country had supplied building materials for his home and that the builder of his home had not paid for the building materials. Generis advised Fellows that the matter would be taken care of at the closing. Woods, the builder, was present at the mortgage closing and admitted to Generis that he had not paid for the building materials. Woods promised to pay Town and Country later – after he received his check at the closing. Instead of following the general practice and cutting a separate check payable to Town and Country, Generis permitted Woods to sign a closing affidavit stating that there were no unpaid claims for materials on Fellows' home. Later, the mortgage was signed and the previously prepared checks by National City Bank were disbursed. Woods took his check but never paid Town & Country for the building materials as he had promised at the closing.

It has been said that "courts will find a duty where ... reasonable persons would recognize it and agree that it exists." *Gariup Construction Co v. Foster,* 519 N.E.2d 1224, 1227 (Ind.1988) (quoting PROSSER & KEETON ON TORTS § 53, at 359 (5th ed.1984)). Recognizing the difficult task it can be to apply such a nebulous legal principle, our supreme court has provided a framework for determining the existence of duty. A court should balance three factors in determining whether to impose a duty in a negligence action: (1) the relationship between the parties, (2) the reasonable foreseeability of the harm, and (3) public policy concerns. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991), *reh. denied; Indiana Bell Telephone Co. v. Maynard,* 705 N.E.2d 513, 514 (Ind.Ct. App.1999), *trans. denied.*

A relationship that gives rise to a duty does not necessarily have to emanate from a contract. "In determining whether a

---

**8.** Town and Country did not request that its amended complaint or its trial brief be included in the record. Thus, the record does not reveal the precise arguments that Town and Country made before the trial court. However, the findings of the trial court indicate that Town and Country argued the negligence of National City Bank. In the interest of justice, I choose to address this issue.

legal duty arises, consideration must be given to the nature of the relationship between people and whether the party being charged with negligence had knowledge of the situation or circumstances surrounding that relationship." *T.S.B. v. Clinard*, 553 N.E.2d 1253, 1256 (Ind.Ct. App.1990).

In the case at hand, National City Bank knew that Woods owed money to Town and Country for building materials used on Fellows' home. It had this knowledge during the closing when it permitted Woods to falsify an affidavit stating that he did not owe money to building suppliers and then delivered a check to Woods, the builder. This closing procedure was a departure from the custom and practice of other mortgagees in the area. This departure from the custom and practice placed Town & Country and National City Bank at risk. National City Bank created a relationship with Town & Country by its conduct.

The harm to Town & Country was foreseeable as well. "An analysis of the foreseeability component of duty involves two considerations: whether the injured person was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable." *Indiana Bell*, 705 N.E.2d at 514. National City's agent, Generis, was well aware that Town & Country had not been paid when he handed the builder his check at the closing of the mortgage loan; therefore, the victim was foreseeable. Although Generis did not know the builder would renege on his promise to pay the amount that he owed to Town & Country, the possibility was most certainly created by his conduct. Therefore, I conclude that the type of harm was also reasonably foreseeable. That harm being that Town & Country would never receive the approximately $30,000.00 due it.

Finally, public policy concerns weigh in favor of concluding that National City Bank owed Town & Country a duty of care. As noted by Judge Sullivan in his concurrence, National City Bank's "conduct represents a total disregard for the interests of persons known to have an interest in the proceeds of the real estate closing and in addition flies in the face of well established custom and practice in the lending industry." Concurring opinion at 1013. National City Bank was in the best position to protect both Fellows and Town & Country, but it failed to protect either. I conclude that National City Bank owed Town & Country a duty.

Because the trial court concluded that no such duty existed, it did not decide whether this duty had been breached or whether any breach proximately caused the damages suffered by Town & Country. Accordingly, I would reverse and remand for a new trial as to those issues.